KEITH A. CALL (6708)
**SPENCER FANE LLP**
10 Exchange Place, Suite 1100
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
keithcall@spencerfane.com

TROY RACKHAM (Admitted Pro Hac Vice)
**SPENCER FANE LLP**
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: (303) 839-3860
trackham@spencerfane.com

*Attorneys for Defendants other than*
*Torben Welch and Messner General Partnership*

---

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| KOSHER EATS LLC, a Florida limited liability company, EMERALD CONSULTING PARTNERS LLC, a Florida limited liability company, ABBSON LLC, a New York limited liability company, MSC COMPANIES, LLC, a Utah limited liability company, and HOMEPEOPLE CORPORATION, a New York corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>TORBEN WELCH, an individual, CALEB MEYER, an individual, MICHELLE HARDEN, an individual, RENNE FINCH, an individual, DAVID REEVES, an individual, BENJAMIN TIETGEN, an individual, DARREN ALBERTI, an individual, KATE BAILEY, an individual, BRENDA BARTELS, an individual, ALEX BELTZ, an individual, AMBER BLASINGAME, an individual, BRETT | **MESSNER REEVES, LLP'S, MR PARTNERS', AND BRIGHAM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>Case No. 2:24-cv-00520-DBB-DBP<br><br>District Judge David Barlow<br>Magistrate Judge Dustin B. Pead<br><br><br>**[REDACTED VERSION]** |

BOON, an individual, VALERIE
BROMLEY, an individual, EDGAR
CARRANZA, an individual, KATHLEEN
CARTER, an individual, CYNTHIA
CARUCCI, an individual, CHARLES
CAVANAGH, an individual, LAURA
CHARTRAND, an individual, GREGORY
COHEN, an individual, KIMBERLEY
CRONIN, an individual, ISAAC CRUM, an
individual, ERICA DEATHERAGE, an
individual, MATTHEW DEENIHAN, an
individual, ALLISON DODD, an individual,
BRIEANNA DOLMAGE, an individual,
PATRICK DRAKE, an individual, R.J.
ERTMER, an individual, RACHEL FARR,
an individual, MARY BRYNE FLETCHER,
an individual, AUSTIN GEMMELL, an
individual, MATTHEW GEORGE, an
individual, DEANNA GILBERTSON, an
individual, MARGARET GRAY, an
individual, SCOTT HAWRANEK, an
individual, ANDREW HOLLINS, an
individual, AMY HUFF, an individual,
CRAIG HUMPHREY, an individual, MATT
JEDRZEJEK, an individual, MACLAIN
JOYCE, an individual, IDIN
KASHEFIPOUR, an individual, DARA
KELLER, an individual, DANIEL KLETT,
an individual, STEVEN KNAUSS, an
individual, MARJORIE KRATSAS, an
individual, JASON MARTINEZ, an
individual, BRYANT MESSNER, an
individual, IAN MITCHELL, an individual,
SCOTT MONROE, an individual, SIMONE
MONTOYA, an individual, BRUCE
MONTOYA, an individual, KATHLEEN
MOWRY, an individual, CHRISTINA
MUNDY, an individual, ANN NGUYEN, an
individual, KATHERINE OTTO, an
individual, JONATHAN OWENS, an
individual, JULIAN PARDO DE ZELA, an
individual, FRANK PERRETTA, an
individual, PETER PIERCE, an individual,
WILLIAM RANDALL, an individual,
RICHARD REICE, an individual, ADAM

ii

| | |
|---|---|
| ROYVAL, an individual, HEATHER SALG, an individual, EDWIN SCHWARTZ, an individual, MIKHAIL SHAH, an individual, GREG SITRICK, an individual, ROWAN SMITH, an individual, AARON SOLEIMANI, an individual, HEATHER STERN, an individual, JOHN STEVENS, an individual, DEANNE STODDEN, an individual, MATTHEW SULLIVAN, an individual, JENNY THORNTON, an individual, WADE WARTHEN, an individual, ANDREW WELCH, KARIE WILSON, an individual, DOUGLAS WOLANSKE, an individual, JON ZIMMERMAN, an individual, JAKE BRIGHAM, an individual, and MESSNER REEVES LLP, a Colorado partnership, | |
| Defendants. | |

Defendants Messner Reeves, LLP (the "Firm"), ten of its alleged partners ("MR Partners"),[1] and Jake Brigham move the Court, pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6), to dismiss Plaintiffs' *First Amended Complaint* (*FAC*) because Plaintiffs' *FAC* fails to state a claim against the Firm, the MR Partners or Mr. Brigham upon which relief can be granted. As grounds, the Firm, the MR Partners, and Mr. Brigham (collectively referred to as the "Moving Parties") state:

---

[1] The MR Partners who make this motion are: Bryant Messner, Bruce Montoya, David Reeves, John Shunk, Douglas Wolanske, Caleb Meyer, Michelle Harden, Matthew Sullivan, Jon Zimmerman, and Renee Finch. *See FAC*, ¶ 15 (identifying partners of Messner Reeves, LLP). These Defendants anticipate Torben Welch, another equity partner in Messner Reeves, LLP, will file a separate motion to dismiss. Although the partners held the interests in the partnership through their own entities, *id.*, the Court may infer from the allegations that the entities holding each partners' economic interests are controlled by the identified partners.

## INTRODUCTION, RELIEF SOUGHT, SPECIFIC GROUNDS FOR MOTION

Messner Reeves, LLP is a law firm formed as a Colorado limited liability partnership. Messner Reeves, LLP is owned by eleven entities, which in turn are owned by eleven MR Partners who serve as equity partners in the Firm.[2]  Mr. Brigham is an former associate at the Firm.  All of the remaining Defendants are former or current W-2 at-will employees of the Firm.  The at-will employees are filing their own motion to dismiss simultaneous with this Motion because, as former or current employees, they occupy a somewhat different position.

Plaintiffs are five companies that entered into a Business Equity Line of Credit agreement ("BELOC") with INBE Capital Group, LLC ("INBE"), a non-party.  Plaintiffs agreed with INBE to invest money with INBE in order to secure business lines of credit.  Plaintiffs wired those funds to establish Interest Control Accounts ("ICA").  The BELOC specifically provided that INBE could commingle ICA payments and that INBE could use those payments.  Plaintiffs allege that INBE never funded the loans and never returned their ICA payments.

Plaintiffs' remedy, if one exists, is to seek recovery from its contractual partner, INBE.  In fact, other INBE investors have done just that.[3]  These Plaintiffs, however, have sued the wrong parties.  First, they have targeted Torben Welch, a Messner Reeves attorney who formerly represented INBE's joint venture partner, Clearwater Premiere Perpetual Master, LLC ("CPPM"), and who is alleged to have had a role in INBE's use of the ICA funds.  Plaintiffs have also sued Mr. Welch's law firm, Messner Reeves, LLP.

---

[2]   Plaintiff's *FAC* identifies 11 equity partners of Messner Reeves, LLP even though there are currently thirteen.  One of the equity partners has left the firm and three have joined.  Because Plaintiffs allege eleven partners of the firm (*FAC*, ¶ 15), these Defendants accept that averment for this Motion's purpose.  These Defendants make this note to clarify the facts and avoid any confusion. Further, Defendant Torben Welch is an equity partner but is not a moving party here. It is anticipated he will file his own motion to dismiss.  Thus, this motion is made on behalf of ten equity partners.

[3]   *See, e.g. Konala, LLC v. Messner Reeves, LLP et al.,* Case No. 24-CV-00195 (D. Utah 2024); *see also Kosher Eats, LLC v. Messner Reeves, LLP et al.*, Case No. 24-CV-05161 (C.D. Ca. 2024); *BKNS Management, LLC v. Messner Reeves LLP*, et al. 24-CV-05581-MKV (S.D.N.Y. 2024).

But Plaintiffs don't just stop there.  They have also named in this case ten other equity partners in Messner Reeves, LLP.  Those ten "MR Partners" (all equity partners but Mr. Welch) never represented INBE or CPPM and have no connection with and no knowledge of the substantive facts.  Plaintiffs have alleged RICO and state law claims against each of these unwitting MR Partners, solely on the basis that they are somehow part of a non-existent "Messner General Partnership" that is vicariously liable for all of the acts of all the other Defendants.  Plaintiffs make these allegations even though: (1) Messner Reeves is formally organized as a limited liability partnership (not a general partnership) under Colorado law, and (2) none of the MR Partners had any knowledge of or participation in the substantive facts.  Plaintiffs also sued associate Brigham, even while acknowledging he was only an "associate attorney employed by Messner Reeves" who "report[ed] to Welch as Welch was his supervising attorney on a daily basis."  *FAC*, ¶ 112.  Plaintiffs have apparently cast this overly broad net for its "shock and awe" impact.  But, as demonstrated below, its claims fail.

Courts have characterized RICO as "the litigation equivalent of a thermonuclear device." *Dempsey v. Sanders*, 132 F.Supp.2d 222, 226 (S.D.N.Y. 2001) (citation omitted).  Because the "mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants," courts should "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  By naming the Firm, the MR Partners, and Mr. Brigham as Defendants in their RICO claims, Plaintiffs intended to detonate the thermonuclear device in this case to have maximum stigmatizing effect to improperly get someone other than INBE to pay them back for their ICA deposits.

The Court must dismiss the RICO claim against the Moving Parties (Count One) for four reasons:

1. Plaintiffs fail to identify an alleged "enterprise" that is distinct from a "person" who can be liable under RICO, as required by 18 U.S.C. § 1962(c).

2.    Plaintiffs fail to allege with particularity any predicate acts that would be sufficient to establish liability against Moving Parties as required by 18 U.S.C. § 1962(c) and Fed. R. Civ. P. 9(b).

3.    Plaintiffs fail to allege a pattern of continuous and related activity as required by 18 U.S.C. § 1962(c).

4.    Plaintiffs fail to allege that any of the Moving Parties (other than Mr. Welch) personally participated in the operation or management of the alleged "enterprise," as required by 18 U.S.C. § 1962(c).

The Court should also dismiss Plaintiffs' RICO conspiracy claim (Count Two) asserted only against Mr. Welch and Mr. Brigham. Plaintiffs cannot establish an independent violation of 18 U.S.C. § 1962(c) for each of the four reasons stated above and because Plaintiffs fail to allege the necessary intent.

Plaintiffs' state law claims against the Moving Parties – claims for conversion, negligence, and breach of fiduciary duty (Counts Three through Eight) – all fail to state a claim because no Defendant ever represented any Plaintiff. Defendants therefore owed no duty to any Plaintiff. *See BMF Advance, LLC v. Litscape, LLC*, 637 F.Supp.3d 1272, 1286 (D. Utah 2022) (concluding law firm had no duty under Utah law to protect interest of non-clients who wired funds to law firm as part of its client's transaction; granting law firm's motion to dismiss). The conversion claim also fails because the *FAC* does not allege that the Moving Parties wrongfully received the money Plaintiffs agreed to send or actually converted anything.

Plaintiffs' First Amended Complaint fails to state any claim against the Firm, the ten MR Partners, or Mr. Brigham. The Court should dismiss all claims with prejudice.

## SUMMARY OF RELEVANT ALLEGATIONS IN COMPLAINT

**A.     Parties.**

1.      Defendant Messner Reeves, LLP, is a Colorado limited liability partnership registered with the Colorado Secretary of State.  *FAC*, ¶ 15; *see also Certificate of Good Standing* (attached as *Ex. A*).[4]

2.      Among other Defendants, Plaintiffs sued the Firm, its eleven equity partners, and an associate, Mr. Brigham.  *FAC* ¶¶ 13-15.

3.      The *FAC* identifies all of the individual Defendants as "employees" of Messner Reeves, LLP.  *See FAC*, ¶¶ 1 (defining "Messner Reeves" as "Messner Reeves LLP"); *id.,* ¶¶ 13-15,[5] 112, 127, 143, 175, 189 & 212.

4.      Plaintiffs allege that Jake Brigham "was an associate attorney employed by" Messner Reeves, LLP.  *FAC* ¶¶ 1, 112.

5.      Plaintiffs allege the ten MR Partners and 67 other Messner lawyers are all partners in an unincorporated general partnership known as the "Messner General Partnership."  *FAC* ¶ 16.

6.      Plaintiffs allege that the MR Partners (and other Defendants) share "office space," practice law in "practice groups," share or pool "resources for administrative support," collectively use[] electronic file systems," and have "divided responsibilities."  *Id.*, ¶ 89.

7.      Plaintiffs further allege that revenue that the MR Partners (and other Defendants) receive from their clients for legal work they perform is contributed "to a central account to cover shared expenses," including Messner Reeves' "rent, insurance, utilities, and other fixed costs," but do so "without a formal written partnership agreement among them."  *Id.*

---

[4] The Court can take judicial notice of the Colorado Secretary of State's certified public document "without converting a motion to dismiss into a motion for summary judgment."  *JP Morgan Tr. Co. Nat. Ass'n v. Mid-Am. Pipeline Co.*, 413 F.Supp.2d 1244, 1258 (D. Kan. 2006) (citing *Grynberg v. Koch Gateway Pipeline Co*., 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004)).

[5] *FAC* ¶ 15 identifies the "partners" of Messner Reeves, LLP as eleven corporations bearing the names of the MR Partners.

8.      Plaintiffs allege that "[a]lthough there was no formal written partnership agreement[6], the General Partnership Defendants' [including the MR Partners'] repeated use of the term 'partner' and their conduct, including shared decision-making, revenue-sharing, and public representations, established the formation, operation, and management of the unincorporated Messner General Partnership, which operated concurrently and distinctly alongside Messner Reeves," LLP, the Colorado limited liability partnership.  *Id.*, ¶ 92.

9.      Plaintiffs allege that, as general partners in an alleged general partnership, all of the MR Partners (and other Defendants) are jointly and severally liable for the acts of Mr. Welch. *FAC* ¶¶ 93-94.

10.     Except as alleged above in Paragraphs 5-8, Plaintiffs do not allege that any of the MR Partners held or exercised authority to manage or control Messner Reeves, including the LLP and the alleged Messner General Partnership.  *See generally, FAC*.

11.     Plaintiffs do not allege that any of the MR Partners had any involvement or knowledge with respect to the substantive facts.  *See generally , FAC.*

12.     Plaintiffs do not allege that *any* Defendant, inclusive of the Firm, the MR Partners, Mr. Brigham, and Mr. Welch, represented any Plaintiff, or that any Plaintiff had an attorney-client relationship with any Defendant.   *See generally, FAC*. Instead, the *FAC* alleges only that Defendants represented INBE.  *FAC* ¶ 26.

---

[6] The allegation that there was no formal written partnership agreement is patently false.  Messner Reeves, LLP is governed by an Amended and Restated Agreement of Partnership ("*MR Partnership Agreement*"), a copy of which is attached as *Ex. B* with confidential information redacted, pursuant to DUCivR 5-3(a)(2)(C).  The Court may properly consider the *MR Partnership Agreement* on this motion. *See JP Morgan Trust*, 413 F.Supp.2d at 1256. Plaintiffs' *FAC* identifies 11 alleged partners of Messner Reeves, LLP.  *See FAC* ¶ 15.  The only possible source for this information is the *MR Partnership Agreement*, which Defendants counsel provided to Plaintiffs' counsel before they filed the *FAC*.  However, for the reasons explained in the "Argument" section below, this Court should grant this motion to dismiss regardless of whether it considers the *MR Partnership Agreement*.

**B.      Alleged Substantive Facts.**

13.      Plaintiffs are all investors who invested with INBE, who are disappointed that the money they invested with INBE has not been returned.  *FAC*, ¶¶ 46, 56-59.

14.      Plaintiffs allege that Mr. Welch, while a partner with Messner Reeves, LLP, represented INBE, *id.*, ¶ 17 & 26, which allegedly "is a sham lender with no assets, funding, or capitalization." *Id.*, ¶ 21.

15.      Plaintiffs claim Mr. Welch obtained and edited a draft "document referred to as a Business Expansion Line of Credit Agreement ('BELOC')" which was later disseminated to "brokers" who in turn disseminated the BELOC drafts "to each borrower seeking a loan by a broker, INBE, or an INBE representative." *Id.*, ¶¶ 27-29, 35 & 42.

16.      Plaintiffs allege the BELOC contained false statements and misled them and prospective borrowers. *Id.*, ¶¶ 27-29, 31-32, 38-42 & 48-49.

17.      Plaintiffs allege Mr. Welch's client, INBE, transmitted the BELOC containing false statements to representatives of the Plaintiffs to induce them "to pay a 25% ICA deposit" to Messner Reeves, LLP to be placed in Messner Reeves, LLP's trust account.  *Id.*, ¶¶ 30-32, 48-50.

18.      The BELOC specifically provides, "The ICA Payment or account need not be segregated by Lender [INBE], may be commingled with other Lender funds, ***and may be utilized by Lender****.*" *BELOC* § 3.6 (emphasis added) (attached as *Ex. C*).[7]

19.      Plaintiffs allege that between April 27, 2023 and July 7, 2023 they wired to Messner Reeves, LLP's trust account a collective amount of $10,070,000 in funds for the ICA deposits made to INBE in reliance on the BELOC they received from INBE. *FAC,* ¶¶ 47-57.

20.      Plaintiffs further allege the funds wired to Messner Reeves, LLP for Messner Reeves, LLP's client INBE were not returned by INBE, that all "eight borrowers lost their ICA

---

[7] The Court may properly consider the BELOC on this motion to dismiss.  *See, e.g., JP Morgan Trust*, 413 F.Supp.2d at 1256.

deposits," and "[s]ix of the eight borrowers did not receive any tranche of BELOC loan funding" from INBE.  *Id.*, ¶¶ 53, 63-65.

## ARGUMENT

### A.    Applicable Standards.

Fed. R. Civ. P. 12(b)(5) requires dismissal of Plaintiffs' *FAC* if it "fails to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads **factual** content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).  Although the Court must accept as true all well-pleaded factual allegations in a complaint, it need not accept legal conclusions.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012) (citations omitted).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 577).

### B.    Plaintiffs Fail to Allege a Plausible RICO Claim Against the MR Partners.

Plaintiffs' Count One alleges a claim against the MR Partners (and other Messner Reeves employees excluding Mr. Brigham) for violating RICO, 18 U.S.C. § 1962(c).[8]  "[A] plaintiff asserting a § 1964(c) claim for a violation of § 1962(c) 'must plausibly allege that' the defendants

---

[8]  RICO is a law "designed to prevent 'known mobsters' from infiltrating legitimate businesses." Jed S. Rakoff & Howard W. Goldstein, RICO CIVIL AND CRIMINAL LAW AND STRATEGY, § 1.01, at 1-4 (2000 ed.) (quoting S. Rep. 91-617, at 76 (1969)).  RICO often is misused, so courts must review RICO allegations skeptically "with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state court do not gain access to treble damages and attorney fees in federal court simply because they are cast in terms of RICO violations." *Dempsey,* 132 F.Supp.2d at 226.

'**each** (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (emphasis added). These required elements for a claim under Section 1964(c) "must be established as to each individual defendant," *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500 (1985)), because the "focus of section 1962(c) is on the **individual patterns of racketeering engaged in by a defendant**, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (emphasis added).

Fed. R. Civ. P. 9(b) requires a plaintiff asserting a RICO claim based on mail or wire fraud, as the Plaintiffs do here, to allege facts constituting such fraud with particularity. *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023). To satisfy this standard, the complaint "must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *George*, 833 F.3d at 1254 (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). To satisfy Rule 9(b) in pleading a RICO claim, Plaintiffs "must allege what conduct is attributable to each defendant." *Schrader v. Wynn*, No. 2:19-CV-2159, 2021 WL 619376, at *7 (D. Nev. Feb. 17, 2021) (unpublished, citations omitted). The Court should dismiss Plaintiffs' RICO count against the MR Partners for all of the reasons articulated in the "Introduction," each of which is addressed in detail below.

### 1.    Plaintiffs Do Not Allege an Enterprise Distinct from the Firm and the Individual Defendants.

RICO defines an "enterprise" as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The definition of enterprise includes legal entities, such as corporations, associations or partnerships, and associations-in-fact. *See* 18 U.S.C. § 1961(4). Here, Plaintiffs allege that an

unincorporated general partnership of lawyers who work at Messner Reeves, which they call a "Messner General Partnership," is a RICO enterprise under this standard. *FAC*, ¶ 101.

Plaintiffs' claim fails, however, because the "enterprise" must be something separate and distinct from the RICO "person" who is named as a defendant. "[T]o establish liability under § 1962(c), [Plaintiffs] must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001). The Tenth Circuit explained that a "legal entity … can perform an action or make a decision only through human intermediaries, such as the individual defendants here. Courts have accordingly found that the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself…." *Board of County Comm'rs. v. Liberty Group*, 965 F.2d 879, 886 (10th Cir. 1992). Put another way, "a defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO 'enterprise.'" *George*, 833 F.3d at 1249 (citing *Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1149 (10th Cir. 1998)); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226–28 (7th Cir. 1997) (concluding that because "an employer and its employees cannot constitute a RICO enterprise," a "manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute" a RICO enterprise).

Accepting Plaintiffs' allegation as true that the "Messner General Partnership" is the enterprise, *FAC,* ¶ 101, the enterprise is not distinct from the Defendant "persons" in this case. The Firm is simply the vehicle through which the 78 individual Defendants practice law.[9] Thus, whether the enterprise is Messner Reeves, LLP, as Plaintiffs originally alleged (*Complaint*, ¶ 84),

---

[9] Plaintiffs allege that there are "77 partners" who were part of the alleged "Messner General Partnership." *FAC*, ¶ 16. Plaintiffs also named Mr. Brigham, a former associate. *Id.*, ¶¶ 14 & 106. The reference to 78 individual Defendants includes both, which amounts to 78 individuals.

or the "Messner General Partnership," as Plaintiffs now allege (*FAC*, ¶ 101), dismissal is required because the enterprise is not distinct from the Firm and the 78 individuals named as Defendants in this case.  As alleged in the *FAC*, the "enterprise" and the Defendants are the same thing.  *See Safe Streets*, 859 F.3d at 884; *Board of County Comm'rs*, 965 F.2d at 886; *Brannon*, 153 F.3d at 1149; *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1353 (11th Cir. 2016) ("While RICO was intended to be interpreted broadly, permitting plaintiffs to plead an enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints … [b]ecause every corporation acts through its own employees as a matter of course [and therefore] allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation.") (citations omitted).

## 2.   Plaintiffs Fail to Allege RICO Predicate Acts with Particularity.

Second, the Court should dismiss Plaintiffs' RICO claim against the MR Partners because Plaintiffs' allegations do not satisfy Rule 9(b)'s particularity requirements.  Plaintiffs base their RICO claim on the alleged predicate racketeering acts of wire fraud (18 U.S.C. § 1343) and violations of the National Stolen Property Act (18 U.S.C. § 2314).  *FAC*, ¶ 100.  Both alleged predicate acts require allegations and proof of unlawful and fraudulent intent.  *See Kreuter v. United States*, 376 F.2d 654, 658 (10th Cir. 1967) (unlawful and fraudulent intent required for claim under National Stolen Property Act); *Clinton*, 63 F.4th at 1282 (wire fraud requires unlawful or fraudulent intent).  Plaintiffs "must allege that [the Firm and the Individual Defendants] committed the acts willfully or with actual knowledge of the illegal activities."  *Friedlob v. Trustees of Alpine Mut. Fund Trust*, 905 F.Supp. 843, 858-59 (D. Colo. 1995) (citing *In re Integrated Res. Real Est. Ltd. Partnerships Sec. Litig.*, 850 F.Supp. 1105, 1145 (S.D.N.Y. 1993)).

Plaintiffs do not allege any facts that satisfy Rule 9(b)'s requirements for the MR Partners. Plaintiffs do not allege that any of the MR Partners ever communicated with any of the Plaintiffs at all.  They do not allege that any of the MR Partners made or assisted an interstate wire communication, performed actions that injured them, or engaged in any conduct directed to Plaintiffs or the alleged "scheme."  *United States v. Wittig*, 575 F.3d 1085, 1093 (10th Cir. 2009) (discussing elements of wire fraud); *United States v. Zar*, 790 F.3d 1036, 1049 (10th Cir. 2015) (same).  Plaintiffs do not allege the MR Partners: (1) transported or caused to be transported money, goods, securities, wares, merchandise; (2) in interstate commerce; (3) valuing more than $5,000; or (4) transported or caused to be transported those funds willfully and with knowledge that the property had been obtained by fraud.  *United States v. Schwab*, 88 F.Supp.2d 1275, 1280 (D. Wyo. 2000) (discussing elements under National Stolen Property Act).  The *FAC* does not allege that the MR Partners did *anything*.

Further, Plaintiffs' RICO claim against the MR Partners fails because Plaintiffs merely lump all of the Defendants together solely based on the barren allegation that they are "partners," without attempting to articulate what each individual Defendant did.  Plaintiffs' *FAC* therefore fails Rule 9(b).  *George*, 833 F.3d at 1254; *see also Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 665 F.Supp.3d 1263, 1281 (D. Utah 2023) ("Rule 9(b) generally requires a plaintiff 'to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof.'") (quoting *Hafen v. Strebeck*, 338 F.Supp.2d 1257, 1263 (D. Utah 2004)); *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (quoting *Haskin v. R.J.*

11

*Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)).  Thus, Plaintiffs' allegations

against the MR Partners fail under Rules 9(b) and 12(b)(6).

Regarding Mr. Welch,[10] Plaintiffs allege that he reviewed and edited the BELOC form

INBE used.  *FAC*, ¶¶ 27-30.  Plaintiffs allege that the BELOC document was "patently absurd"

and contained misrepresentations and false statements.  *Id.*, ¶¶ 31-42.  Defendants dispute those

allegations, but even accepting them as true, Plaintiffs' RICO claim against Mr. Welch fails

because Plaintiffs do not allege that Mr. Welch ever communicated with them, ever made false

statements to them directly, or ever knew that the statements INBE was making were false.

Plaintiffs concede, instead, that INBE's Chief Funding Officer sent the BELOC statements to

them.  *FAC*, ¶¶ 45-47.  Plaintiffs also do not allege which statements in the BELOC Mr. Welch

allegedly made, as compared to INBE or someone else.  *Id.*

At most, Plaintiffs allege that Mr. Welch used the Messner Reeves, LLP trust account as

the account that held the funds Plaintiffs wired to INBE.  The BELOC indicates, however, that the

ICA payments Plaintiffs would be sending would "be commingled with other Lender funds, ***and***

***may be utilized by Lender***."  *BELOC* § 3.6.  The Lender – INBE – was Mr. Welch's (alleged)

client.  INBE was contractually entitled to hold the funds and legally entitled to direct its counsel

– who owed duties to INBE, the alleged client – about the funds.  *BMF Advance, LLC*, 637

F.Supp.3d at 1282 n. 77 (citing *Hughes v. Housley*, 599 P.2d 1250, 1254 (Utah 1979)).

Thus, the Court should dismiss Plaintiffs' RICO claim against the MR Partners pursuant

to Fed. R. Civ. P. Rules 9(b) and 12(b)(6).

---

[10] Although Mr. Welch is not a moving party here, arguments relating to Mr. Welch are included
here to demonstrate there can be no vicarious liability extending to any of the moving Defendants.

### 3. Plaintiffs Fail to Allege a Pattern of Continuous and Related Racketing Activity.

The Court should dismiss Plaintiffs' RICO claim against the MR Partners because Plaintiffs' *FAC* fails to sufficiently allege a "pattern of racketeering activity," which requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years. "[A] RICO pattern requires that the racketeering predicates relate to each other and amount to a threat of continued racketeering activity." *Johnson v. Heath*, 56 F.4th 851, 858–59 (10th Cir. 2022) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To state a RICO claim, Plaintiffs must allege facts demonstrating that the predicate "acts amounted to or threaten continued racketeering activity," which is a standard "more stringent than the relationship standard." *Id.* (quoting *Bixler*, 596 F.3d at 761 for the proposition that "[t]he showing required for continuity ... is more difficult to meet." (quotation omitted)). To establish sufficient continuity, Plaintiffs must allege facts that demonstrate that the alleged predicate acts were more than just related transactions involving the same pattern, but instead were part of the Defendants "regular way of conducting business or that it threatens future repetition." *Id.*, at 860.

The alleged predicate acts – here, wire fraud and violations of the National Stolen Property Act – "must form a pattern—that is, they must be 'ordered' or 'arranged.'" *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). "[T]he mere fact that there are a number of predicates is no guarantee that they fall into any arrangement or order. It is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them ordered or arranged." *Id.* To show racketeering activity is patterned, Plaintiffs must show (1) the racketeering predicates are related, *and* (2) they amount to or pose a threat of continued criminal activity. *Id.* The continuity requirement "focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). "Continuity may refer to a closed period of repeated conduct (closed-ended continuity) or

to past conduct that by its nature projects into the future with a threat of repetition." *McGowan v. Weinstein*, 562 F.Supp.3d 744, 751 (C.D. Cal. 2021) (quoting *H.J. Inc.*, 492 U.S. at 237).

"Continuity does not necessarily require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode[,]'" but "[t]he circumstances of the case [ ] must suggest that the predicate acts are indicative of a threat [of] continuing activity." *Id.* (quoting *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987)). "Closed-ended continuity may be established by a series of related predicates extending over a substantial period of time." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). To determine whether closed-ended continuity exists, courts consider factors such as "(1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries." *Id.* (citation omitted). "Because "Congress was concerned in RICO with long-term criminal conduct," "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* (citation omitted). Moreover, "the mere fact that predicate acts extend over a long period of time does not establish continuity; the predicate acts, whatever their frequency and duration, [must] be patterned." *Id.* (listing supporting cases). A "single plan with a singular purpose and effect does not constitute a [closed ended] 'pattern' of racketeering activity." *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996) (unpublished); *see also McGowan*, 562 F.Supp.3d at 752 ("Defendants' efforts to silence McGowan was a single, unified project with an end goal and an end date. Thus, it is not the sort of continuous effort that is prohibited by RICO."); *Buran Equip. Co, Inc. v. Hydro Elec. Constructors, Inc.*, 656 F.Supp. 864, 866 (N.D. Cal. 1987) ("It places real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'"); *see also Medallion Television*, 833 F.2d at 1364 (finding no closed-ended pattern of racketeering activity

in a single alleged scheme with a single victim even though scheme involved several fraudulent acts).

Here, Plaintiffs allege thirteen predicate acts in the form of aiding INBE in revising BELOC agreements that INBE sent to Plaintiffs (*FAC*, ¶¶ 45-57), which allegedly contained false statements (*id.*, ¶¶ 31-42).  However, these alleged acts cannot qualify as a pattern of predicate acts because they constitute typical legal services performed on behalf of a client, and the performance of regular professional services does not subject one to RICO liability.  *See BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1101 (10th Cir. 1999); *see also Albright v. Attorney's Title Ins. Fund*, 504 F.Supp.2d 1187, 1205 (D. Utah 2007); *see also Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993).  Additionally, Plaintiffs allege that each of the thirteen alleged predicate acts was performed as part of a single "scheme" on behalf of Messner Reeves, LLC's client, INBE.  *Id.*, ¶¶ 1 & 17.

The Tenth Circuit considered a similar situation in *Johnson*, 56 F.4th at 862, where plaintiff alleged defendant engaged in "pattern of wire fraud, bank fraud, and access-device fraud … by fraudulently inducing customers to use their credit cards to buy gasoline and services and then fraudulently inducing Plaintiff to buy the station for more than it was worth."  *Id.*, at 858.  Twenty-four customers were involved in the transactions over eleven years.  *Id.,* at 860.  The "district court dismissed the RICO claim for failure to state a claim and declined to exercise supplemental jurisdiction over Plaintiff's remaining state claims."  *Id.*, p. 857.  The Tenth Circuit affirmed:

> Although establishing continuity does not require the existence of multiple racketeering schemes, the number of schemes is still "highly relevant." *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. 2893.  Without a threat of continued illegal activity, a single scheme rarely supports finding continuity. *See Sil-Flo*, 917 F.2d at 1516 ("While a single scheme may suffice in some instances, here there is simply no indication of a threat of continuing illegal activity.").  And a single scheme even less likely supports a continuity finding when the scheme targets only "one discrete goal." *See id.* Plaintiff alleged only a single scheme with the discrete goal of "burning" the Wells station—inflating its value and dumping it off on an

unsuspecting buyer.  Thus, the nature of the alleged RICO scheme does not support a finding of extensiveness.

Even if all the allegedly fraudulent transactions committed in operating and selling the Wells station constitute RICO predicates, the predicates were all similar and amounted to a single, noncomplex scheme with a discrete goal. Using these factors to guide us to a "natural and commonsense result," *Resol. Tr.*, 998 F.2d at 1544, and considering the long-term criminal activity RICO targets, *see Boone*, 972 F.2d at 1556, we hold that Plaintiff did not allege a sufficiently extensive scheme to plausibly support a finding of closed-ended continuity. "At most, what has been alleged is a business deal gone sour … and various other torts by the defendants." *Sil-Flo*, 917 F.2d at 1516. Thus, we affirm the district court's dismissal of Plaintiff's RICO claim for failure to state a claim upon which relief may be granted.

*Id.*, at 862.

The Court should reach the same result here.  Plaintiffs only alleged a single "scheme," *FAC*, ¶¶ 17-19 & 37, with the discrete goal of inducing investments for INBE to fund the BELOC loans that "would be funded immediately." *Id.*, ¶¶ 62-67.  Plaintiffs allege the specific "purpose" of the scheme "was to induce the borrower to pay a 25% ICA deposit to Messner Reeves, which, in the case of Kosher Eats, amounted to $2 million." *Id.*, ¶ 50. Although Plaintiffs allege several predicate acts through the transmission of the BELOCs to each Plaintiff, and through the wiring of funds for the common INBE investment because of the BELOCs, Plaintiffs allege only one scheme with one discrete goal.  The allegations, assuming their truth, are similar to the allegations in *Johnson,* 56 F.4th at 862.  The district court dismissed the plaintiff's RICO claim for failure to state claim.  The Tenth Circuit affirmed.  *Id.*  The same result should occur here.

### 4.    Plaintiffs Do Not Allege that Any of the MR Partners Personally Participated in the Operation or Management of the Enterprise.

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court held that RICO requires sufficient allegations and proof that each defendant named personally participated "'directly or indirectly, in the conduct of such enterprise's affairs,' [which means] one must have some part in directing those affairs." 507 U.S. at 179 (cleaned up).  "This, in turn, requires a showing that the defendant 'participate[d] in the operation or management of the enterprise itself.'"

*George*, 833 F.3d at 1251 (quoting *Reves*, 507 U.S. at 185); *see also United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013) (RICO plaintiff must allege and establish that each named defendant operated or managed the enterprise's affairs, not merely their own affairs); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (same); *Marshall v. Goguen*, 604 F.Supp.3d 980, 1014 (D. Mont. 2022), *appeal dismissed*, No. 22-35499, 2023 WL 4230375 (9th Cir. Apr. 7, 2023) ("[M]ere participation in the alleged scheme is insufficient, … as is the existence of a business relationship between defendants, … the performance of services for the enterprise … or the knowledge of or benefit from the scheme.") (numerous citations omitted).

Here, Plaintiffs allege nothing to suggest that any of the MR Partners participated in the operation or management of any RICO enterprise.  For example, Plaintiffs do not allege the MR Partners personally participated in the representation of INBE, personally participated in the management or operation of the alleged "Messner General Partnership," or personally participated in any conduct that advanced the alleged enterprise. The *FAC* does not allege they did anything. *FAC*, at *passim*.  Thus, Plaintiffs fail to state a claim against the MR Partners under *Reves*.

Plaintiffs also fail to plausibly alleges that Mr. Welch participated in the operation or management of any RICO enterprise.  Plaintiffs allege that Mr. Welch participated in reviewing and revising INBE's draft BELOC.  *FAC*, ¶¶ 27-30.  These allegations are insufficient to state a claim because "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998); *see also Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1325 (7th Cir. 1998).

**C.      Plaintiffs Fail to State a RICO Conspiracy Claim Against Mr. Brigham.**

Plaintiffs' Count Two alleges a claim against Mr. Welch and Mr. Brigham for RICO conspiracy under 18 U.S.C. § 1962(d).  *FAC,* ¶¶ 112-119.  Section 1962(d) makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).  "By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)." *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (citations omitted). Further, a conspiracy claim under subsection (d) requires an alleged conspirator to "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense," or "adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997); *United States v. Harris*, 695 F.3d 1125, 1133 (10th Cir. 2012).

Here, Plaintiffs' substantive RICO claim fails for all the reasons stated in Section B, above. *Johnson*, 56 F.4th at 860; *see also Tal*, 453 F.3d at 1270 (affirming trial court's dismissal of RICO claims for failure to state a RICO claim); (same); *BancOklahoma Mortg. Corp.*, 194 F.3d at 1102 (same). Therefore, Plaintiffs have not sufficiently alleged an independent violation of subsection (c) in order to plead a conspiracy claim under subsection (d).

As against Mr. Brigham, Plaintiffs allege only that "Brigham was an associate attorney employed by the Messner Reeves law firm in Messner's Utah office, reporting to Welch as his supervising attorney on a daily basis."  *FAC,* ¶ 112.  However, as a (now former) associate, Mr. Brigham did not have the factual or legal ability to control, manage, or direct the activities of Messner Reeves, LLP or Messner General Partnership – the alleged enterprises.  Thus, any RICO claim against Mr. Brigham fails under *Reves* and its progeny.

Finally, Plaintiffs fail to allege any facts that establish Mr. Brigham intended "to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense" or adopted "the goal of furthering or facilitating the criminal endeavor." *Salinas*, 522 U.S. at 65;

*Harris*, 695 F.3d at 1133.  Because Plaintiffs failed to sufficiently allege an independent violation

of subsection (c) and because Plaintiffs failed to plead any facts that establish that Mr. Brigham

possessed the necessary intent, the Court should dismiss Plaintiffs' RICO conspiracy claim under

Section 1962(d).

**D.     The Court Should Dismiss Plaintiffs' State Law Claims.**

After dismissing the RICO claims, this Court may decline to exercise supplemental

jurisdiction over Plaintiffs' state law claims for conversion, negligence and breach of fiduciary

duty.  *Tufaro v. Oklahoma*, 107 F.4th 1121, 1141 (10th Cir. 2024);  *United States v. Botefuhr,* 309

F.3d 1263, 1273 (10th Cir. 2002) (citations omitted).  If the Court exercises supplemental

jurisdiction over Plaintiffs' state law claims, however, the Court should dismiss them, too.  This

Motion addresses each state law claim in turn.

**1.     Plaintiffs' Negligence Claims Fail.**

"The essential elements of a negligence action are: (1) a duty of reasonable care owed by

the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately,

of injury; and (4) the suffering of damages by the plaintiff."  *Williams v. Melby*, 699 P.2d 723, 726

(Utah 1985).  Here, the Plaintiffs' negligence claims (Counts Five and Six) fail because no

Defendant owed Plaintiffs – who were not clients – a duty of care.  *BMF Advance, LLC v. Litscape,*

*LLC*, 637 F.Supp.3d at 1286.  As the Court made clear in *BMF Advance,* law firms owe no duty

to non-clients who wire funds to the law firm as a matter of law.  *Id.*

This case is nearly identical to *BMF Advance*.  There, the plaintiff (BMF) agreed to furnish

funds to another entity for the purchase of nitrile gloves.  *Id.*, at 1276.  Instead of depositing the

funds directly with the other entity, the plaintiff caused funds to be deposited into the custody of a

law firm (CBL) representing another party involved in the transaction.  *Id.*  An individual (Mr.

Azulay) then allegedly fraudulently induced the law firm to release the funds to the law firm's

client.  *Id.*, at 1277.  BMF asserted claims against the law firm for negligence and constructive trust.  *Id.*  This Court dismissed the claims pursuant to Fed. R. Civ. P. 12(b)(6), holding that the plaintiff failed to show that the law firm owed it a duty under Utah law.  *Id.*, at 1286.

The same is true here.  No Defendant, including the Moving Parties here, owed a duty of care to Plaintiffs because "[a]t a categorical level, a law firm does not have a special relationship with a third party."  *BMF*, 637 F.Supp.3d at 1282 (citing *Hughes*, 599 P.2d at 1254).  Considering all the factors regarding whether a legal duty exists, the Court held that there is no "duty on a law firm that passively receives a third party's funds as part of its client's transaction."  *Id.*, at 1286; *see also Ruesch v. Purple Shovel, LLC*, No. 4:18-CV-28, 2021 WL 1171722, at *10 (D. Utah Mar. 29, 2021) (unpublished) ("an attorney will be held liable in negligence only to his or her client, and cannot, in the absence of special circumstances, be held liable to anyone else.")  (quoting *Winters v. Schulman*, 1999 UT App 119, ¶ 25, 977 P. 2d 1218).  Because neither the Firm nor its individual attorneys owed a duty to Plaintiffs, the Court must dismiss Plaintiffs' negligence claims.

### 2. Plaintiffs' Breach of Fiduciary Duty Claims Fail.

Plaintiffs' claims for breach of fiduciary duty (Counts Seven and Eight) fail for the same reason.  To state a claim for breach of fiduciary duty, Plaintiffs must allege facts sufficient to establish (2) the existence of "an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 23, 194 P.3d 931, 938 (quoting *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct. App. 1996) and citing Restatement (Third) of the Law Governing Lawyers, § 49 (2000)).  Lawyers owe an undivided fiduciary duty of loyalty to their clients and to no one else.  To impose a fiduciary duty to non-clients would create untenable conflicts of interest.  *See, e.g.*, *Hughes*, 599 P.2d at 1253-54 ("It has long been held, with few exceptions not applicable here, that the obligation of an attorney is

to his client and not a third party.") (citations omitted); *Smoot v. Lund* 369 P.2d 933, 936 (Utah 1962) ("Where an attorney is hired solely to represent the interests of a client, his fiduciary duty is of the highest order and he must not represent interests adverse to those of his client."); *Kilpatrick*, 909 P.2d at 1290 ("As fiduciaries, attorneys have a legal duty to represent the client with undivided loyalty" (internal quotation omitted)); *Shaw Res. Ltd, LLC v. Pruitt, Gushee & Bachtell, P.C.*, 2006 UT App 313, ¶ 28, 142 P.3d 560 ("[A]ttorneys must be completely loyal to their clients."); *Nat'l Sav. Bank of D.C. v. Ward*, 100 U.S. 200, 199, 25 L.Ed. 621 (1879) ("Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party.").  That is why, prior to imposing liability on lawyers, courts "must consider how a ruling that affirms or precludes liability would affect the vigorous representation of clients within the limits of the law…." *Restatement (Third) of the Law Governing Lawyers* § 56 cmt b. (2000).  This Court should reject the imposition of a fiduciary duty to Plaintiffs as a matter of law because any such duty would impinge on the fiduciary duty Defendants had to follow the instructions of their client, INBE.

Plaintiffs' allegations are premised on the existence of an escrow relationship.  *FAC*, ¶¶ 179-180.  Here, however, Plaintiffs were not parties to any escrow contract with Defendants. Plaintiffs have not alleged facts suggesting that any Defendant agreed to accept the duties of an escrow agent with respect to the funds Plaintiffs invested with INBE, even if INBE identified Messner's trust account as the account to where the funds would be deposited.  There was no escrow agreement between Plaintiffs and any Defendant that would impose escrow duties. *Schoepe v. Zions First Nat. Bank*, 750 F.Supp. 1084, 1088 (D. Utah 1990), *aff'd sub nom. Lion Hill Mines Through Schoepe v. Zions First Nat. Bank*, 952 F.2d 1401 (10th Cir. 1992) ("[T]he scope of the escrow agent's duty is governed by the escrow agreement") (citations omitted).  Even if there were an agreement, the Firm's obligation was merely to follow the escrow instructions of

its client, INBE, and not the Plaintiffs. *Id.* ("[T]he escrow agent is a special or limited agent whose authority derives from the escrow agreement and which is limited by the express and implied terms of that agreement.") (citations omitted).

Additionally, even assuming *arguendo* that the Firm acted as an escrow agent pursuant to some agreement that was not alleged, an escrow agent does not have "the affirmative obligation to detect and halt a potentially fraudulent transaction…." *Pyper v. Reil*, 2018 UT App 200, ¶ 24, 437 P.3d 493, 499 (citations omitted). Thus, Plaintiffs have not plausibly alleged facts that any Defendant was an escrow agent who owed fiduciary duties to Plaintiffs. The Court therefore should dismiss Plaintiffs' breach of fiduciary duty claims.

### 3.    Plaintiffs' Conversion Claims Fail.

Counts Three and Four allege claims for conversion. The elements of conversion under Utah law are: "'[1] an act of willful interference with property, [2] done without lawful justification, [3] by which the person entitled to property is deprived of its use and possession,' and [4] that the party 'is entitled to immediate possession of the property at the time of the alleged conversion.'" *Combs v. SafeMoon, LLC*, No. 2:22-CV-642, 2024 WL 1347409 (D. Utah Mar. 29, 2024) (unpublished, citations omitted). Generally, "money cannot be the subject of action for conversion under Utah law," but "misappropriated funds placed in custody of another for some definite application may be the subject of conversion claim." *In re Ogden*, 314 F.3d 1190, 1200 (10th Cir. 2002). "Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right." *Allred v. Hinkley*, 328 P.2d 726, 728 (1958).

Here, once Plaintiffs deposited their ICA funds pursuant to the BELOCs, the funds belonged to INBE, the owner, and expressly could "be commingled with other Lender funds, ***and may be utilized by Lender***." *BELOC* § 3.6 (emphasis added). In *Timothy v. Pia, Anderson, Dorius,*

22

*Reynard & Moss, LLC*, 2018 UT App 31, 424 P.3d 937, *vacated as moot*, 2019 UT 69, 456 P.3d 731, the court considered a similar issue.  There, the plaintiff judgment creditors initiated a lawsuit against the law firm who represented the judgment debtors, bringing claims under Utah's Uniform Fraudulent Transfer Act. 2018 UT App 31, ¶ 7. The court determined that the law firm could not be liable for releasing funds at the request of the client, explaining:

> Here, it is undisputed that Debtors were Law Firm's clients and that the $50,000 was placed in Law Firm's trust account not its business account, indicating that Law Firm held the $50,000 in a fiduciary capacity for Debtors. Thus, based on Law Firm's ethical obligations with respect to funds placed in its trust account, we conclude that Law Firm did not have the requisite legal dominion (or control) over the $50,000, because Law Firm "had no legal right to put the funds to its own use." *See In re Coutee*, 984 F.2d 138, 141 (5th Cir. 1993). Consequently, Law Firm "lacked the requisite dominion" required to be the first transferee of the funds under subsection 25-6-9(2) of the Act. *See id.* And because Law Firm was not the first transferee of the $50,000, "there was no transfer giving rise to liability" on the part of Law Firm. *See Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 166 (Tex. App. 1996).

2018 UT App 31, ¶ 27.

The same analysis applies here.  INBE requested that Plaintiffs wire the funds for the ICA deposit to the Firm's trust account through an agreement with INBE, without any correlating agreement between the Plaintiffs and the Firm providing that the Firm would act as escrow agent for Plaintiffs.  *FAC*, ¶¶ 38-41.  Plaintiffs allege INBE was the Firm's client.  *Id.*, ¶ 26.  As such, the Firm and Mr. Welch "did not have the requisite legal dominion (or control) over" Plaintiffs' funds because they were acting as agents for INBE, who owned the funds after the transfer pursuant to the terms of the BELOC.  *Timothy*, 424 P.3d at 945.  Thus, the Firm cannot be liable for conversion.

Plaintiffs never allege that any of the other Defendants, including Mr. Brigham and the MR Partners, had any knowledge of the funds Plaintiffs wired for the ICA deposits.  Plaintiffs do not allege facts sufficient to suggest that Mr. Brigham or the MR Partners even knew ICA deposits existed, let alone that they exercised dominion and control over the funds.  *FAC*, at *passim.*  Thus,

the Court must therefore dismiss Plaintiffs' conversion claims against Mr. Brigham and the MR Partners.  *Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F.Supp.2d 1181, 1193 (D. Utah 2002) (dismissing conversion claim because defendant did not have "ownership in or control over the contested" property); *In re Coates*, 519 B.R. 842, 849 (Bankr. D. Utah 2014) (rejecting conversion claim because payment of funds resulted in transfer to party to whom funds belonged and party therefore did not convert the funds under Utah law).

**D.    The Individual Defendants Cannot Be Jointly and Severally Liable.**

Plaintiffs allege that the MR Partners are jointly and severally liable because they are "general partners" in an imaginary "Messner General Partnership."  These allegations do not withstand scrutiny under Fed. R. Civ. P. 11 because, as Plaintiffs' counsel is fully aware, Messner Reeves is a limited liability partnership organized under Colorado law, not a general partnership. Colorado has abolished joint and several liability for partners in a limited liability partnership. This issue is more fully briefed in Section A of the *Messner Employees' and Former Messner Employees' Motion to Dismiss*, filed contemporaneously with this Motion, and in the Individual Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, which the individual Defendants anticipate filing as soon as the safe-harbor period mandated by Rule 11(c)(2) expires.  Those Motions provide independent bases on which the Court should dismiss the claims against the Firm, Mr. Brigham and the MR Partners.

**E.    There Is No Vicarious Liability Extending to the Firm.**

The Firm (Messner Reeves, LLP) cannot be liable if none of its constituent attorney Defendants is liable.  *See, e.g., Board of County Comm'rs.*, 965 F.2d at 886 (a "legal entity … can perform an action or make a decision only through human intermediaries").  This motion, together with other motions to dismiss being filed in this case,[11] demonstrate that all claims against all

---

[11] The Firm incorporates and adopts by reference all other motions to dismiss filed in this case.

Defendants in this case should be dismissed.  Because no claim against any of the Firm's constituents can survive, all claims against the Firm must also be dismissed.

## <u>CONCLUSION</u>

The Court should dismiss Plaintiffs' *FAC* against the Messner Reeves, LLP firm, Mr. Brigham, and the MR Partners for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 9th day of October, 2024.

**SPENCER FANE LLP**


*/s/ Troy R. Rackham*
Keith A. Call
Troy Rackham
*Attorneys for Messner Reeves Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2024, I caused a true and correct copy of the foregoing **MESSNER REEVES, LLP'S, MR PARTNERS', AND BRIGHAM'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** to be filed with the court and served to the following:

Stephen K. Christiansen
**CHRISTIANSEN LAW, PLLC**
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
steve@skclawfirm.com
*Attorneys for Plaintiffs*

Kenneth E. Chase (Admitted Pro Hac Vice)
**CHASE LAW & ASSOCIATES, P.A.**
2700 N. Military Trail, Suite 150
Boca Raton, FL 33431
kchase@chaselaw.com
*Attorneys for Plaintiffs*

Howard W. Foster (Admitted Pro Hac Vice)
**FOSTER PC**
155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
hfoster@fosterpc.com
*Attorneys for Plaintiffs*

*/s/ Stephanie Chavez*
Legal Assistant

SLC 7252871.2