David J. Jordan (1751)
djordan@foley.com
Charles D. Morris (18051)
charlie.morris@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: 801.401.8900

*Attorneys for Defendant Torben Welch*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KOSHER EATS LLC, a Florida limited liability company; EMERALD CONSULTING PARTNERS LLC, a Florida limited liability company, ABBSON LLC, a New York limited liability company, MSC COMPANIES, LLC a Utah limited liability company, and HOMEPEOPLE CORPORATION, a New York corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>TORBEN WELCH, an individual, et al.<br><br>    Defendants. | **DEFENDANT TORBEN WELCH'S MOTION TO DISMISS**<br><br>Civil No. 2:24-cv-00520-DBB-DBP<br><br>The Honorable David Barlow<br><br>Magistrate Judge Dustin B. Pead |

# TABLE OF CONTENTS

Page(s)

RELIEF REQUESTED AND SUPPORTING GROUNDS ........................................................1

INTRODUCTION ...............................................................................................................1

RELEVANT FACTUAL BACKGROUND...............................................................................3

LEGAL STANDARD...........................................................................................................4

ARGUMENT .....................................................................................................................5

I.    Plaintiffs' RICO and RICO Conspiracy Claims Against Welch Fail as a Matter of Law
      and Should Be Dismissed. ...........................................................................................5

      A.    Plaintiffs Do Not Allege a RICO Enterprise Distinct from Welch or His Legal
            Services. ......................................................................................................6

      B.    Plaintiffs Fail to Plead Predicate Acts with Rule 9(b) Particularity. .......................7

      C.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity. ..................................9

      D.    Welch Did Not Participate in the Operation or Management of a RICO Enterprise.
            ..................................................................................................................11

      E.    Plaintiffs' RICO Conspiracy Claim Fails as a Matter of Law. ..............................12

II.   Plaintiffs' Conversion Claim Against Welch Fails as a Matter of Law. ..........................12

III.  Plaintiffs' Negligence Claim Fails Because Welch Owed No Duty of Care to Non-
      Clients. ...................................................................................................................14

      A.    Welch Owed No Duty of Care to Plaintiffs. ......................................................15

IV.   Plaintiffs' Breach of Fiduciary Duty Claim Against Welch is Legally Deficient. ............16

CONCLUSION.................................................................................................................18

4854-7029-4512.4

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Allred v. Hinkley*, 328 P.2d 726 (1958) ................................................................................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 4

*BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999).......... 9, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 4

*BMF Advance, LLC v. Litscape, LLC*, 637 F. Supp. 3d  (D. Utah 2022) .................................... 15

*Board of Cnty. Comm'rs v. Liberty Grp.,* 965 F.2d 879 (10th Cir. 1992) ................................... 8

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)................................................. 6

*Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, 194 P.3d 931 ........................... 16

*Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023)....................................... 5, 7

*Combs v. SafeMoon, LLC*, No. 2:22-CV-642, 2024 WL 1347409 (D. Utah Mar. 29, 2024)....... 12

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001 (8th Cir. 2008) ................. 5

*Emery v. American Gen. Fin., Inc.,* 134 F.3d 1321 (7th Cir. 1998) ......................................... 8, 12

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997)....................................................... 7

*Friedlob v. Alpine Mut. Fund Trust*, 905 F. Supp. 843 (D. Colo. 1995) ...................................... 8

*George v. Urb. Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016)........................................... 5, 6

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998) ................................................. 8, 11

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)................................................................. 9, 10

*Hughes v. Housley*, 599 P.2d 1250 (Utah 1979)................................................................... 15, 16

*In re Coates*, 519 B.R. 842 (Bankr. D. Utah 2014) ................................................................. 14

*Johnson v. Heath*, 56 F.4th 851 (10th Cir. 2022) ................................................................. 9, 10, 12

*JP Morgan Trust v. Mid-America Pipeline*, 413 F.Supp.2d 1244 (D. Kan. 2006)........................ 3

*Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012) ..................................................... 4

ii

## TABLE OF AUTHORITIES

Page(s)

*Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283 (Utah Ct. App. 1996) ......................... 16, 17

*Koch v. Koch Indus.*, 203 F.3d 1202 (10th Cir. 2000) ............................................... 5, 6

*Nat'l Sav. Bank of D.C. v. Ward*, 100 U.S. 195 (1879) ................................................. 17

*NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559, 1996 WL 263646 (N.D. Cal. Apr. 13, 1996) ............................................................................. 10

*Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F. Supp. 2d 1181 (D. Utah 2002) ................. 14

*Pyper v. Reil*, 2018 UT App 200, 437 P.3d 493 ......................................................... 17

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) .......................................................... 11

*Ruesch v. Purple Shovel, LLC*, 2021 WL 1171722 (D. Utah Mar. 29, 2021) .............................. 15

*Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ................................. 5

*Schoepe v. Zions First Nat. Bank*, 750 F. Supp. 1084 (D. Utah 1990), aff'd, 952 F.2d 1401 (10th Cir. 1992) ........................................................................................... 17

*Schrader v. Wynn*, No. 2:19-CV-2159, 2021 WL 619376 (D. Nev. Feb. 17, 2021) ..................... 8

*Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507 (10th Cir. 1990) ......................................... 10

*Smoot v. Lund*, 369 P.2d 933 (Utah 1962) .............................................................. 17

*State v. Twitchell*, 832 P.2d 866 (Utah Ct. App. 1992) ................................................ 13

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ........................................................ 12

*Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC*, 2018 UT App 31, 424 P.3d 937 ...... 13

*United Food & Commercial Workers Union v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013)..... 11

*Williams v. Melby*, 699 P.2d 723 (Utah 1985) .......................................................... 14

*Winters v. Schulman*, 1999 UT App 119, 977 P.2d 1218 ............................................... 16

4854-7029-4512.4

## RELIEF REQUESTED AND SUPPORTING GROUNDS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Torben Welch ("**Defendant**" or "**Welch**") respectfully moves to dismiss all claims against him in the First Amended Complaint ("**FAC**") filed by Plaintiffs Kosher Eats, LLC, Emerald Consulting Partners, LLC, Abbson, LLC, MSC Companies, LLC, and Homepeople Corporation (collectively "**Plaintiffs**"). The claims against Welch fail to state any viable claim upon which relief can be granted. Specifically, the FAC relies on conclusory allegations and improper group pleading, without adequately establishing Welch's personal involvement. As such, each of Plaintiffs' claims against Welch should be dismissed in their entirety.[1]

## INTRODUCTION

Plaintiffs are five business entities that entered into Business Equity Line of Credit agreements ("**BELOC**") with INBE Capital Group, LLC ("**INBE**"), a non-party. As part of the BELOC agreements, Plaintiffs transferred over $10 million in funds to INBE to establish Interest Control Accounts ("**ICA**"), expecting to receive lines of credit that were not delivered. Plaintiffs have chosen not to pursue claims against INBE, the counterparty responsible for these alleged failures. Instead, they attempt to drag attorney Torben Welch—who provided legal services for INBE's joint venture partner, Clearwater Premiere Perpetual Master, LLC ("**CPPM**")—into the dispute[2]. Notably, Plaintiffs do not claim that Welch misappropriated or personally benefited

---

[1] To the extent that arguments made in the Messner Reeves Defendants' October 9, 2024 Motion to Dismiss are applicable to Welch, Defendant incorporates those arguments by reference.

[2] While the FAC alleges that Welch's client was INBE, in fact, the Messner firm's engagement letter is with CPPM, not INBE, but that distinction is not material to Welch's motion. For purposes of this motion, Welch will refer to INBE as if it were his client, consistent with the incorrect allegations in the FAC.

from the ICA funds. Instead, Plaintiffs allege that Welch played a role in INBE's handling of funds, despite the fact that he was not a party to the agreements, did not represent Plaintiffs, and had no legal duty to them. Plaintiffs concede that, as authorized by the BELOC agreements, Welch, directed the transfer of the ICA funds from Messner's trust account to an account controlled by INBE, at INBE's instruction.  Plaintiffs' attempt to implicate Welch in this matter is without merit. The claims against him should be dismissed for several reasons.

*First*, Plaintiffs' RICO claims against Welch fail because there was no distinct enterprise, and his providing legal services to his client does not satisfy the elements required under RICO. Courts have held that RICO liability requires personal involvement in the operation or management of an alleged enterprise. Simply advising his client, as its attorney, on the preparation and use of BELOC agreements does not rise to the level of directing or managing a criminal enterprise. Plaintiffs' attempt to cast Welch's legal representation as racketeering activity is baseless, and their RICO claims should be dismissed.

*Second*, Plaintiffs' conversion claim is equally meritless. The BELOC agreements expressly allowed INBE to direct the transfer of the ICA funds from Messner's trust account to an account controlled by INBE, and to commingle and use the ICA funds. Welch, acting as counsel, did not control those funds beyond following the instructions of his client. Because Plaintiffs agreed to the express terms of the BELOC agreements and because Welch never personally received the funds, the conversion claim against Welch fails as well.

*Third*, Plaintiffs' negligence claim should also be dismissed. Under Utah law, attorneys do not owe a duty of care to non-clients unless special circumstances create such a duty. No such circumstances are alleged to exist here. Welch's only obligation was to his client. He owed no legal duty to Plaintiffs. Without the existence of a legal duty, Plaintiffs' negligence claim fails.

4854-7029-4512.4

*Finally*, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law. Plaintiffs do not and cannot allege that an attorney-client relationship existed between Welch and themselves. Utah law strictly limits the imposition of an attorney's fiduciary duties to clients. Because Welch's fiduciary duty extended only to his client, Plaintiffs' fiduciary duty claim should also be dismissed.

In the end, Plaintiffs' attempt to hold Welch liable for their losses from dealings with INBE is legally unsound. Welch's limited role as legal counsel to CPPM does not support any of the claims asserted against him. Plaintiffs' claims against Welch are simply an effort to shift responsibility away from the proper parties. These claims should be dismissed in their entirety.

## <u>RELEVANT FACTUAL BACKGROUND</u>[3]

In 2023, Plaintiffs entered into agreements with INBE Capital Group, a non-party, to secure BELOCs. (FAC ¶¶ 43, 46). As part of the arrangement, Plaintiffs agreed to fund "Interest Control Accounts" by wiring money to the trust account of Messner Reeves, LLP ("**Messner Reeves**"), where attorney Torben Welch worked as legal counsel to CPPM (or INBE) (*Id*. ¶ 26). Plaintiffs do not allege that Welch had any direct contractual relationship or attorney-client relationship with them. *See generally* FAC.

The BELOC agreements explicitly allowed ICA funds to be transferred from Messner's trust account to an account controlled by INBE at INBE's direction.  They also allow "commingled [by INBE] with other Lender funds" and "utilized by the Lender." *See* BELOC § 3.6, attached hereto as Exhibit A.[4] Between April 27, 2023, and July 7, 2023, Plaintiffs

---

[3] While Welch disputes many of the allegations in the First Amended Complaint, for purposes of this motion only, they are assumed to be true.

[4] The Court may properly consider the BELOC on this motion to dismiss because it is extensively referred to in the FAC. *See, e.g., JP Morgan Trust,* 413 F.Supp.2d at 1256.

collectively wired $10,070,000 to Messner's trust account, expecting that the ICA deposits would facilitate access to the promised lines of credit. (FAC ¶¶ 43, 56-57). After that deposit, INBE directed that the funds be transferred to its own account.  INBE then allegedly failed to return those funds or fund the loans, leaving Plaintiffs without their expected financing. (*Id*. ¶¶ 53, 63-65).

Welch's role was limited to legal services provided on behalf of his client. Plaintiffs do not allege that Welch misappropriated or benefited from the funds they transferred to INBE. Plaintiffs only allege that Welch reviewed and revised the BELOC agreement but do not claim that Welch ever communicated with Plaintiffs or controlled the ICA funds beyond the direction of INBE. (*Id*. ¶¶ 27-29, 42). And while Plaintiffs claim that their ICA deposits were lost, they do not allege that Welch exercised control or dominion over the funds.  (FAC ¶¶ 30-32, 48-50). Plaintiffs have sued Welch, along with other partners and employees of Messner Reeves, asserting claims for RICO violations, conversion, negligence, and breach of fiduciary duty. (*Id*. ¶¶ 99-214).

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible only if the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Conclusory allegations or a mere recitation of elements are insufficient. Id. Although the Court must accept as true all well-pleaded factual allegations in a complaint, it need not accept legal conclusions. *Khalik v. United Air Lines,* 671 F.3d 1188, 1190-91 (10th Cir. 2012) (citations omitted).

Additionally, claims sounding in fraud—such as those based on wire fraud under RICO—must meet the heightened pleading standard of Rule 9(b). *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023). Plaintiffs must allege the "who, what, when, where, and how" of the fraudulent conduct with specificity. *See Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

<u>**ARGUMENT**</u>

In their First Amended Complaint, Plaintiffs assert claims against Torben Welch for: (1) violations of RICO and conspiracy to violate RICO, (2) conversion, (3) negligence, and (4) breach of fiduciary duty. All these claims are legally deficient and should be dismissed.

**I.     Plaintiffs' RICO and RICO Conspiracy Claims Against Welch Fail as a Matter of Law and Should Be Dismissed.**

Plaintiffs allege RICO violations and a conspiracy to violate RICO against Welch under 18 U.S.C. §§ 1962(c) and 1962(d). To establish a valid RICO claim, Plaintiffs must plausibly allege that Welch: (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016). These elements must be proven against each defendant individually. *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). Additionally, because Plaintiffs base their RICO claims on predicate acts of wire fraud and violations of the National Stolen Property Act, they must meet the heightened pleading standards of Rule 9(b). *See Clinton*, 63 F.4th at 1276. To satisfy this standard, the complaint "must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences

thereof.'" *George*, 833 F.3d at 1254 (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

Plaintiffs' RICO allegations fail because the facts alleged do not establish the existence of an "enterprise" that is legally distinct from Welch's legal services. Plaintiffs' allegations also fail to demonstrate any direction or control by Welch over an alleged criminal enterprise. Plaintiffs further fail to satisfy the heightened pleading standards of Rule 9(b), as they lack the necessary details of time, place, or content of the purportedly fraudulent acts. Additionally, Plaintiffs allege only a single scheme with a singular objective—the transfer of ICA funds— which does not meet the statutory requirement of demonstrating a pattern (at least two predicate acts) of racketeering activity. For these reasons, and because the Plaintiffs' § 1962(d) conspiracy claims are derivative of the defective § 1962(c) claims, these claims against Welch should be rejected.

### A.    Plaintiffs Do Not Allege a RICO Enterprise Distinct from Welch or His Legal Services.

RICO requires that the enterprise be distinct from the "person" named as a defendant. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Plaintiffs allege in conclusory fashion that Welch's legal services constituted participation in a racketeering enterprise. Importantly, RICO does not impose liability where the alleged enterprise consists solely of a defendant acting through its agents or employees. George v. Urban Settlement Servs., 833 F.3d 1242, 1249 (10th Cir. 2016).

Accepting Plaintiffs' allegations as true, Plaintiffs claim that Welch, as part of his professional duties, reviewed and revised the BELOC agreements, which INBE disseminated. (FAC ¶ 34). This does not transform Welch's legal services into the operation of a RICO

enterprise. The representation of a client through routine legal work does not meet RICO's requirement of a distinct enterprise. *See* Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226-28 (7th Cir. 1997) (rejecting the notion that a corporation and its employees can form a distinct enterprise under RICO). Plaintiffs allege no plausible basis for concluding that Welch's actions exceeded the scope of his professional duties. Therefore, Plaintiffs' RICO claims against Welch fail.

### B.    Plaintiffs Fail to Plead Predicate Acts with Rule 9(b) Particularity.

To satisfy Rule 9(b), Plaintiffs must plead the predicate acts underlying their RICO claims—wire fraud and violations of the National Stolen Property Act—with particularity. This requires specifying the time, place, and content of the alleged fraud, as well as identifying the party responsible for making any fraudulent statements. *See* Clinton, 63 F.4th at 1276. Plaintiffs' First Amended Complaint fails to meet this heightened standard.

Plaintiffs allege that Welch reviewed and revised the BELOC agreement, but they do not claim that he ever communicated directly with them or made any fraudulent statements. (FAC ¶¶ 34, 45). Instead, Plaintiffs concede that it was INBE's representatives—not Welch—who transmitted the BELOC documents and made any representations regarding its terms. (*Id*.). Although Plaintiffs assert that Welch participated in drafting the BELOC, they neither allege that Welch conveyed any false statements to them nor explain how his involvement in drafting the document constituted fraud.

The speculative nature of Plaintiffs' allegations further undermines their case. They suggest Welch may have been aware of certain misrepresentations, but that speculation is not enough to satisfy RICO. Under RICO, providing services to an enterprise, even with knowledge of illicit activity, is insufficient for liability under § 1962(c). A defendant must be involved in the

operation or management of the enterprise itself. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998); *Emery v. American Gen. Fin., Inc.,* 134 F.3d 1321, 1325 (7th Cir. 1998). This Court has also held that providing services within a professional scope, such as legal representation, does not establish involvement in the operation or management of a RICO enterprise, without clear criminal conduct. *See Board of Cnty. Comm'rs v. Liberty Grp.,* 965 F.2d 879, 885 (10th Cir. 1992) (holding that professionals carrying out their ordinary functions are not liable under RICO without more specific involvement in the criminal conduct). Plaintiffs have not alleged facts showing that Welch's legal representation constituted criminal conduct.

Even accepting Plaintiffs allegations as true, they fail to connect Welch's role in reviewing the BELOC to any fraudulent conduct. Rule 9(b) requires plaintiffs to attribute specific fraudulent acts to each defendant. Instead, Plaintiffs rely on vague, conclusory allegations. *See Schrader v. Wynn*, No. 2:19-CV-2159, 2021 WL 619376, at *7 (D. Nev. Feb. 17, 2021) (stating that Rule 9(b) requires allegations to specify the conduct attributable to each defendant).

The BELOC itself permitted Plaintiffs to deposit ICA payments into Messner's trust account, with express authorization for INBE to commingle and use the funds. (BELOC § 3.6). Thus, Plaintiffs agreed to terms that allowed the commingling of funds, negating any claim that Welch misused or improperly controlled them. Merely following INBE's instructions and holding funds in a trust account and transferring them, as permitted by the BELOC, does not constitute wire fraud or a violation of the National Stolen Property Act. *See Friedlob v. Alpine Mut. Fund Trust*, 905 F. Supp. 843, 858 (D. Colo. 1995).

To establish RICO liability, Plaintiffs must specifically allege that Welch acted with fraudulent intent. They do not allege that Welch made any direct misrepresentations to them or

personally participated in any fraudulent communications. Absent such allegations, no inference of fraudulent intent on Welch's part can be made. *See BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (holding that providing routine professional services for a single transaction does not establish a RICO pattern).

Plaintiffs' vague and conclusory allegations fail to meet the particularity required by Rule 9(b). Plaintiffs failed to plead the essential factual elements of its claims with particularity. As such, Plaintiffs fail to state a RICO claim upon which relief may be granted, and this Court should dismiss those claims.

### C.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity.

A RICO claim requires a plaintiff to allege a "pattern of racketeering activity," which involves at least two predicate acts that are related and pose a threat of continued criminal activity. *See* H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). In the Tenth Circuit, courts apply this standard stringently to ensure that RICO is not misused to convert ordinary business disputes into federal racketeering claims. *See* Johnson v. Heath, 56 F.4th 851, 860 (10th Cir. 2022).

Here, Plaintiffs fail to satisfy this requirement. Plaintiffs' allegations against Welch revolve around a single, discrete business transaction: the alleged fraudulent inducement of ICA payments through the BELOC agreements. (FAC ¶¶ 17-19, 50). The FAC does not allege that Welch was involved in multiple schemes, nor does it allege facts suggesting a threat of continued criminal conduct. The allegations are confined to Welch's professional services in reviewing and revising the BELOC agreements and transferring the funds to INBE, as it directed and expressly contemplated by the BELOC agreements.

Preparing legal documents for a single business transaction does not constitute a "pattern" of criminal activity. It does not include to at least two predicate acts. Nor have Plaintiffs alleged that preparing the BELOC agreements was somehow continuous or posed a threat of future criminal activity. See H.J. Inc., 492 U.S. at 242. Plaintiffs allege that Welch reviewed and revised the BELOC agreements, but they fail to show how this single instance of legal work could possibly demonstrate repeated criminal conduct. Instead, Plaintiffs, in conclusory fashion, attribute INBE's website and social media postings to Welch with supporting factual allegations. (FAC ¶¶ 70-74). This is a classic example of a single business deal gone awry, not the kind of continuing criminal conduct that RICO was designed to target. See Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) (rejecting a RICO claim based on a single business transaction that merely described a deal "gone sour").

In Johnson v. Heath, 56 F.4th at 860, the Tenth Circuit rejected a RICO claim where the plaintiff alleged multiple acts over several years because those acts were part of a single fraudulent scheme involving one goal. Similarly, here, Plaintiffs allege various acts all related to the BELOC agreements. But they are all part and parcel of the same alleged scheme: the purported fraud surrounding ICA payments. (FAC ¶¶ 17-19, 50). Plaintiffs do not allege that Welch was involved in any other purported criminal conduct or fraudulent schemes beyond this single business deal. Without allegations of ongoing, varied, or continuous illegal conduct, Plaintiffs cannot establish the "pattern" of racketeering activity required under RICO. See NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin., No. 95-20559, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996) ("A single plan with a singular purpose and effect does not constitute a 'pattern' of racketeering activity.").

Because Plaintiffs have only alleged a single transaction involving the ICA funds, they

have not demonstrated the continuity or relatedness required by law to establish a RICO pattern.

Thus, Plaintiffs' RICO claims against Welch should be dismissed for failure to allege a pattern of

racketeering activity.

### D.    Welch Did Not Participate in the Operation or Management of a RICO Enterprise.

RICO liability requires a defendant to actively participate in the operation or management

of the enterprise itself, beyond merely providing services. In *Reves v. Ernst & Young*, the

Supreme Court clarified that a defendant must have a role in directing the affairs of the enterprise

to be liable under RICO. 507 U.S. 170, 179 (1993). Simply providing professional services, even

with knowledge of the enterprise's illicit activities, does not meet this requirement. *See Goren,*

*156 F.3d at 728.*

Plaintiffs allege that Welch reviewed and revised the BELOC agreements used by INBE.

They do not allege, however, that Welch exercised any control or direction over the so-called

enterprise's operations. Reviewing legal documents, without more, does not constitute managing

or operating the affairs of the enterprise. *United Food & Commercial Workers Unions v.*

*Walgreen Co.* emphasizes that RICO plaintiffs must show that the defendant operated or

managed the enterprise's affairs, not merely performed tasks at a client's direction. 719 F.3d 849,

856 (7th Cir. 2013). Here, Plaintiffs fail to allege any facts that demonstrate Welch had any

decision-making authority or role in directing INBE. As discussed about, Welch's involvement

was limited to his role as legal counsel, which does not satisfy the *Reves* standard for RICO

liability.

Courts have consistently held that the performance of routine professional services, such as drafting or reviewing documents, does not constitute participation in the operation or management of a RICO enterprise. *See Emery*, 134 F.3d at 1325. Plaintiffs' own allegations concede that INBE alone controlled the operations and management of the purported enterprise. (FAC ¶¶34, 51). That concession dooms their RICO claims. Accordingly, the RICO claims against Welch should be dismissed.

### E.    Plaintiffs' RICO Conspiracy Claim Fails as a Matter of Law.

Plaintiffs allege that Welch conspired to violate RICO under 18 U.S.C. § 1962(d). (FAC ¶¶ 112-119). But a conspiracy claim, under § 1962(d), cannot survive without a valid substantive RICO claim. The Tenth Circuit has made clear that "by its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d)." *See* Tal v. Hogan, 453 F.3d 1244, 1270 (10th Cir. 2006). Because Plaintiffs have failed to plead a substantive RICO violation under § 1962(c), their conspiracy claim automatically fails. *See* Johnson, 56 F.4th at 860; *BancOklahoma Mortg. Corp.*, 194 F.3d at 1103.

## II.    Plaintiffs' Conversion Claim Against Welch Fails as a Matter of Law.

Plaintiffs' conversion claim against Welch fails because the funds were deposited into Messner's trust account, not wrongfully received by Welch, and any handling of the funds was consistent with the parties' agreement.

To establish conversion under Utah law, Plaintiffs must prove: "(1) an act of willful interference with property, (2) done without lawful justification, (3) by which the person entitled to the property is deprived of its use and possession," and (4) that the plaintiff "is entitled to immediate possession of the property at the time of the alleged conversion." *See* Combs v.

SafeMoon, LLC, No. 2:22-CV-642, 2024 WL 1347409, at *4 (D. Utah Mar. 29, 2024). "Money may be the subject of conversion," but only "when the party charged wrongfully received it." *See State v. Twitchell,* 832 P.2d 866, 870 (Utah Ct. App. 1992). Conversion requires intent to exercise dominion or control over another's property, though not necessarily conscious wrongdoing. *See* Allred v. Hinkley, 328 P.2d 726, 728 (1958).

Here, Plaintiffs' conversion claim against Welch fails for two reasons: (1) the funds were not wrongfully received by Welch; they were received by Messner, and (2) Welch did not personally exercise dominion or control over the funds as is necessary to establish conversion under Utah law.

*First*, Welch did not wrongfully receive the ICA funds. To begin with, Welch did not receive them at all; Messner did.  Welch's role as an attorney involved facilitating the process on behalf of his clients, but he did not personally receive or control the ICA payments.  And they were not received wrongfully.  Plaintiffs agreed to deposit the ICA payments into Messner's trust account pursuant to the terms of the BELOC. The BELOC agreements explicitly provide for the funds to be held in a trust account for the benefit of his client, the lender. Since the parties agreed to the terms of the BELOC, which permitted the deposit into Messner's trust account, the receipt of the funds was not wrongful in any way.

The Timothy case provides a directly applicable analysis. In Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC, 2018 UT App 31, 424 P.3d 937, the court held that a law firm could not be liable for conversion when it held funds in trust for its client, as the firm lacked dominion over the funds. The court explained that the firm acted on behalf of its client and did not have the legal right to control or use the funds independently. Similarly, Welch did not

wrongfully receive the funds; he acted on behalf of his client, the rightful owner of the ICA

deposits under the BELOC agreements.

*Second*, Plaintiffs do not allege any facts showing that Welch personally exercised

dominion or control over the funds. As counsel, Welch's role did not involve handling the ICA

funds or directing their use. The funds were placed into Messner's trust account per INBE's

instructions. Plaintiffs allege that Welch directed wires on behalf of his client. Plaintiffs do not

allege that Welch himself asserted ownership or maintained control of the ICA funds, or that he

took actions inconsistent with INBE's control or ownership rights under the BELOC. *See*

Precision Vascular Sys., Inc. v. Sarcos, L.C., 199 F. Supp. 2d 1181, 1193 (D. Utah 2002)

(conversion requires ownership or control over the contested property); In re Coates, 519 B.R.

842, 849 (Bankr. D. Utah 2014) (rejecting conversion claim where the funds were transferred to

the rightful owner and not converted under Utah law).

Because Plaintiffs fail to allege that Welch exercised any control over the funds, the

Court should dismiss Plaintiffs' conversion claim against Welch.

## III.    Plaintiffs' Negligence Claim Fails Because Welch Owed No Duty of Care to Non-Clients.

Plaintiffs' negligence claim against Welch fails at the outset because, under Utah law,

attorneys owe no duty of care to non-clients absent a special relationship.  Plaintiffs do not allege

they had any special relationship with Welch.

To establish a valid negligence claim, a plaintiff must allege: (1) the defendant owed the

plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach caused the plaintiff's

injury; and (4) the plaintiff suffered damages. *See Williams v. Melby*, 699 P.2d 723, 726 (Utah

1985)**.** Plaintiffs' negligence claim against Welch fails because, as a matter of law, Welch owed no duty of care to Plaintiffs—who were not his clients nor in a special relationship with him.

### A.        Welch Owed No Duty of Care to Plaintiffs.

The Utah Supreme Court has repeatedly held that attorneys owe a duty of care only to their clients, absent special circumstances creating a duty to third parties. *See Hughes v. Housley*, 599 P.2d 1250, 1254 (Utah 1979)**.** This principle bars claims against attorneys by non-clients involved in their clients' transactions. As this Court explained in *BMF Advance, LLC v. Litscape, LLC*, a law firm or attorney does not owe a duty to third parties simply because it holds or transfers client funds during a transaction. 637 F. Supp. 3d 1286, 1282 (D. Utah 2022). Plaintiffs' allegations of negligence here mirrors the claims rejected in *BMF Advance*.

In *BMF Advance*, the plaintiffs wired funds to a law firm's trust account on behalf of a third-party client. When the client failed to fulfill its obligations, the plaintiffs sued the law firm for negligence. The court dismissed the claim, holding that the firm owed no duty to the plaintiffs simply for facilitating the transaction. *Id*. at 1286. Similarly, here, Plaintiffs allege that Welch facilitated the transfer of ICA payments to INBE's account. But like the law firm in *BMF Advance*, Welch acted solely on behalf of his client, and had no legal obligation to safeguard Plaintiffs' funds.

Utah law does not impose a duty to non-clients in this context. Courts do not impose liability on attorneys for negligence toward third parties without a clear, special relationship . Plaintiffs allege no such special relationship between themselves and Welch. *Ruesch v. Purple Shovel, LLC*, 2021 WL 1171722, at *10 (D. Utah Mar. 29, 2021), affirms this principle, holding that an attorney's duty extends only to their clients, barring rare exceptions. Here, Welch's

actions—reviewing the BELOC documents and participating in the funds transfer at INBE's direction—do not give rise to any duty owed to Plaintiffs.

Even if Welch was aware of Plaintiffs' part in the transaction, merely knowing about a third party's role does not create a duty. The *Ruesch* court cited *Winters v. Schulman*, 1999 UT App 119, ¶ 25, 977 P.2d 1218, reaffirming that, in Utah, "an attorney will be held liable in negligence only to his or her client, and cannot, in the absence of special circumstances, be held liable to anyone else." Thus, under Utah law, Welch owed no duty to Plaintiffs, and without such a duty, their claim of negligence against him cannot be sustained.

## IV. Plaintiffs' Breach of Fiduciary Duty Claim Against Welch is Legally Deficient.

Similarly, Plaintiffs' breach of fiduciary duty claim against Welch is fundamentally flawed because he had no attorney-client relationship with them, and attorneys owe fiduciary duties exclusively to their clients, not to third parties. Under Utah law, fiduciary duties arise only within specific relationships, such as between an attorney and a client. Attorneys owe no fiduciary duties to non-clients. *See* Christensen & Jensen, P.C. v. Barrett & Daines, 2008 UT 64, ¶ 23, 194 P.3d 931, 938. An attorney's duty is to their client alone, and extending fiduciary obligations to third parties would create unmanageable conflicts of interest, undermining the attorney's role. *See Hughes*, 599 P.2d at 1254.; Kilpatrick v. Wiley, Rein & Fielding, 909 P.2d 1283, 1290 (Utah Ct. App. 1996). Plaintiffs' claims, therefore, rest on a flawed premise that cannot survive as a matter of law.

Utah courts have consistently held that an attorney's obligation is to their client, not to third parties. As the Utah Supreme Court stated, "it has long been held, with few exceptions, that the obligation of an attorney is to his client and not a third party." *See Hughes*, 599 P.2d at 1254. This principle ensures that attorneys provide undivided loyalty to their clients and avoid conflicts

of interest. *See Smoot v. Lund*, 369 P.2d 933, 936 (Utah 1962) ("Where an attorney is hired solely to represent the interests of a client, his fiduciary duty is of the highest order and he must not represent interests adverse to those of his client."); *See* Kilpatrick, 909 P.2d at 1290 (Utah Ct. App. 1996) (holding that attorneys must act with "undivided loyalty" to their clients). The U.S. Supreme Court has similarly recognized this standard, stating that "beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party." *See Nat'l Sav. Bank of D.C. v. Ward*, 100 U.S. 195, 199 (1879).

Plaintiffs' try to avoid this case law by alleging that Welch acted as an escrow agent by temporarily holding ICA funds in Messner's trust account. (FAC ¶¶ 179-180). Under Utah law, however, an escrow agent's duties are limited to the terms of the escrow agreement, and no such agreement is alleged to exist between Plaintiffs and Welch. *See* Schoepe v. Zions First Nat. Bank, 750 F. Supp. 1084, 1088 (D. Utah 1990), aff'd, 952 F.2d 1401 (10th Cir. 1992). Even if such an agreement were alleged, Welch's duty would be to follow the instructions of his client—not the Plaintiffs. Id.

Lastly, even if Welch had been an escrow agent, Utah law does not impose a duty on escrow agents to detect or prevent fraud. Pyper v. Reil, 2018 UT App 200, ¶ 24, 437 P.3d 493, 499. Plaintiffs have not alleged that Welch's actions deviated from his client's instructions or that he had any duty to act on behalf of Plaintiffs. In fact, Plaintiffs' allegations confirm that Welch acted within the scope of his professional obligations to his client. Because Plaintiffs have failed to allege the existence of an attorney-client relationship or any duty owed to them by Welch, their breach of fiduciary duty claim should be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the reasons discussed above, Plaintiffs' First Amended Complaint and all the claims against Torben Welch therein should be dismissed.

DATED:  October 23, 2024

FOLEY & LARDNER LLP


*/s/ David J. Jordan*
David J. Jordan
Charles D. Morris

*Attorneys for Defendant Torben Welch*

18