KEITH A. CALL (6708)
**SPENCER FANE LLP**
10 Exchange Place, Suite 1100
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
keithcall@spencerfane.com

TROY RACKHAM (Admitted Pro Hac Vice)
**SPENCER FANE LLP**
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: (303) 839-3860
trackham@spencerfane.com

*Attorneys for all Defendants other than Toben Welch*

---

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| KOSHER EATS LLC, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>TORBEN WELCH, *et al.*<br><br>Defendants. | **MESSNER REEVES, LLP'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:24-cv-00520-DBP<br><br>District Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

Messner Reeves, LLP respectfully submits this Response to Plaintiffs' Motion for Preliminary Junction (ECF No. 203) (hereinafter "*Motion*").

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ..... 1

II. FACTS ..... 1

III. APPLICABLE STANDARDS ..... 4

IV. ARGUMENT ..... 6

A. The Court Lacks Authority to Freeze the Escrow Funds. ..... 6

B. Assuming *Arguendo* the Court Has the Authority to Enter the Preliminary Injunction Plaintiffs Request, the Court Should Deny Plaintiffs *Motion* Because Plaintiffs Have Not Satisfied Their Heightened Burden of Showing All Four Required Elements. ..... 8

1. Plaintiffs Have Not Demonstrated Irreparable Harm. ..... 8

2. Plaintiffs Have Not Demonstrated Substantial Likelihood of Success on their Claims Against Messner Reeves, LLP. ..... 12

a. Conversion. ..... 13

b. Negligence. ..... 17

c. Breach of Fiduciary Duty ..... 19

d. Conclusion. ..... 20

3. The Balance of Harms Weighs Against a Preliminary Injunction. ..... 20

4. The Public Has Little to No Interest in this Purely Private Dispute. ..... 21

C. The Court Should Deny Plaintiffs' Request for a Mandatory Order to Identify to Whom and Where Funds Were Transferred. ..... 24

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*AAAG-California, LLC v. Kisana*,
439 F.Supp.3d 1265 (D. Utah 2020) .......... 7, 22

*Allred v. Hinkley*,
328 P.2d 726 (1958) .......... 13

*Am. Equip. Sys., LLC v. Chester*,
No. 2:23-cv-00680, 2023 WL 8261427 (D. Utah 2023) .......... 24

*Are You Listening Yet PAC v. Henderson*,
No. 2:24-CV-00104-JNP, 2024 WL 1051984 (D. Utah Mar. 11, 2024) .......... 25

*Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*,
565 F.3d 769 (10th Cir. 2009) .......... 12, 20

*Avaya, Inc. v. Acumen Telecom Corp.*,
No. 10-cv-03075-CMA-BNB, 2011 WL 9293 (D. Colo. Jan. 3, 2011) .......... 25

*BMF Advance, LLC v. Litscape, LLC*,
637 F.Supp.3d 1272 (D. Utah 2022) .......... 17, 18

*Bokf, N.A. v. Condon*,
No. 19-CV-01044-PAB, 2019 WL 13195203 (D. Colo. Apr. 17, 2019) .......... 22

*Colorado Montana Wyoming State Area Conf. of the NAACP v. United States Election Integrity Plan*,
No. 22-CV-00581-PAB, 2022 WL 1443057 (D. Colo. May 6, 2022) .......... 25

*Combs v. SafeMoon LLC*,
No. 2:22-CV-642, 2024 WL 1347409 (D. Utah Mar. 29, 2024) .......... 13

*Cooper Enterprises, PC v. Brighton Title Co., LLC*,
2010 UT App 135, 233 P.3d 548 .......... 17

*CRP/Extell Parcel I, L.P. v. Cuomo*,
394 F. App'x 779 (2d Cir. 2010) .......... 11

*Dines v. Comerica Bank & Tr., N.A.*,
No. 22-CV-0403-WJM, 2022 WL 488605 (D. Colo. Feb. 17, 2022) .......... 22

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001) .......... 5, 8, 11, 24

*DTC Energy Grp., Inc. v. Hirschfeld*,
912 F.3d 1263 (10th Cir. 2018) .......... 11

*Fed. Deposit Ins. Corp. v. Antonio*,
649 F.Supp. 1352 (D. Colo. 1986) .......... 9, 10

*First Western Capital Mgmt. Co. v. Malamed*,
874 F.3d 1136 (10th Cir. 2017) .......... 8

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .......... 12, 20

*Free the Nipple-Fort Collins v. City of Fort Collins*,
916 F.3d 792 (10th Cir. 2019) .......... 4, 20

*Gen. Motors Corp. v. Urb. Gorilla, LLC*,
500 F.3d 1222 (10th Cir. 2007) .......... 4, 8, 12, 22

*Greater Yellowstone Coalition v. Flowers*,
321 F.3d 1250 (10th Cir. 2003) ........ 9
*Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) ........ 6, 7, 21
*Heideman v. S. Salt Lake City*,
348 F.3d 1182 (10th Cir. 2003) ........ 1, 5, 8, 9, 21
*Hengle v. Treppa*,
19 F.4th 324 (4th Cir. 2021) ........ 13
*Hughes v. Housley*,
599 P.2d 1250 (Utah 1979) ........ 19
*In re Coutee*,
984 F.2d 138 (5th Cir. 1993) ........ 15, 17
*In re Fredeman Litig.*,
843 F.2d 821 (5th Cir. 1988) ........ 13
*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehab. Servs.*,
31 F.3d 1536 (10th Cir. 1994) ........ 12
*Keybank Nat'l Ass'n v. Williams*,
No. 20-1384, 2022 WL 402379 (10th Cir. Feb. 10, 2022) ........ 11
*Kilpatrick v. Wiley, Rein & Fielding*,
909 P.2d 1283 (Utah Ct. App. 1996) ........ 19
*Klein-Becker USA, LLC v. Prod. Quest Mfg., Inc.*,
429 F.Supp.2d 1248 (D. Utah 2005) ........ 13, 20
*Lane v. Buckley*,
643 F. App'x 686 (10th Cir. 2016) ........ 24
*Lawrence v. Intermountain, Inc.*,
2010 UT App 313, 243 P.3d 508 ........ 15
*Lyons v. Jefferson Bank & Tr.*,
781 F.Supp. 1525 (D. Colo. 1992) ........ 21
*Meisels v. Fox Rothschild LLP*,
240 N.J. 286, 222 A.3d 649 (2020) ........ 17
*Nat'l Org. For Women, Inc. v. Scheidler*,
267 F.3d 687 (7th Cir. 2001) ........ 13
*Nat'l Sav. Bank of D.C. v. Ward*,
100 U.S. , 25 L.Ed. 621 (1879) ........ 19
*New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*,
854 F.3d 1236 (10th Cir. 2017) ........ 20, 22
*New W. Fed. Sav. & Loan Ass'n v. Guardian Title Co.*,
818 P.2d 587 (Utah Ct. App. 1991) ........ 18
*Newsome v. Charter Bank Colonial*,
940 S.W.2d 157 (Tex. App. 1996) ........ 15
*Niemi v. Lasshofer*,
728 F.3d 1252 (10th Cir. 2013) ........ 6, 7
*Noodles Dev., LP v. Ninth St. Partners, LLP*,
507 F.Supp.2d 1030 (E.D. Mo. 2007) ........ 22
*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
389 F.3d 973 (10th Cir. 2004) ........ 5

*Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*,
2015 UT 55, , 355 P.3d 965 .......... 18
*Papageorge v. Zucker*,
169 A.3d 861 (D.C. 2017) .......... 17
*People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*,
852 F.3d 990 (10th Cir. 2017) .......... 20
*PHI Fin. Servs., Inc. v. Johnston L. Off., P.C.*,
2016 ND 20, 874 N.W.2d 910 .......... 17
*Posner v. Equity Title Ins. Agency, Inc.*,
2009 UT App 347, 222 P.3d 775 .......... 20
*Prosper, Inc. v. Innovative Software Techs.*,
188 F. App'x 703 (10th Cir. 2006) .......... 6, 8, 21
*Pyper v. Reil*,
2018 UT App 200, 437 P.3d 493 .......... 20
*Rand v. KOA Campgrounds*,
2014 UT App 246, 338 P.3d 222 .......... 13, 15
*Religious Tech. Ctr. v. Wollersheim*,
796 F.2d 1076 (9th Cir. 1986) .......... 13
*Resol. Tr. Corp. v. Cruce*,
783 F.Supp. 1309 (D. Kan.) .......... 10
*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) .......... 5, 12
*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*,
860 F.3d 844 (6th Cir. 2017) .......... 22
*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003) .......... 13
*Schiermeyer v. Thurston*,
697 F.Supp.3d 1265 (D. Utah 2023) .......... 8, 9, 10, 12, 24
*Schoepe v. Zions First Nat'l Bank*,
750 F.Supp. 1084 (D. Utah 1990) .......... 20
*Schrier v. Univ. Of Co.*,
427 F.3d 1253 (10th Cir. 2005) .......... 5, 8, 11, 12
*Shaw Res. Ltd, LLC v. Pruitt, Gushee & Bachtell, P.C.*,
2006 UT App 313, 142 P.3d 560 .......... 19
*Smoot v. Lund*,
369 P.2d 933 (Utah 1962) .......... 19
*Snyder v. Am. Kennel Club*,
575 F.Supp.2d 1236 (D. Kan. 2008) .......... 23
*Spratley v. State Farm Mut. Auto. Ins. Co.*,
2003 UT 39, , 78 P.3d 603 .......... 24
*State v. Twitchell*,
832 P.2d 866 (Utah Ct. App. 1992) .......... 14
*State v. U.S. Env't Prot. Agency*,
989 F.3d 874 (10th Cir. 2021) .......... 21
*Tillery v. Leonard & Sciolla, LLP*,
437 F.Supp.2d 312 (E.D. Pa. 2006) .......... 21

*Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC*,
2018 UT App 31, 424 P.3d 937 ........ 14, 15, 16
*Utah Gospel Mission v. Salt Lake City Corp*.,
316 F.Supp.2d 1201 (D. Utah 2004) ........ 12
*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7, (2008) ........ 8, 9

**Statutes**

12 U.S.C. § 1821(19)(A) ........ 10
18 U.S.C. § 1964 ........ 13
Utah Code Ann. § 7-22-101 ........ 23
Utah Code Ann. § 7-1-103 ........ 23
Utah Code Ann. § 7-22-101(1)(b) ........ 23
Utah Code Ann. § 7-1-102(1) ........ 23
Utah Code Ann. § 7-1-501(2)(g) ........ 23
Utah Code Ann. § 7-22-108(1)-(2) ........ 23
Utah Code Ann. § 31A-1-301(65) ........ 23, 24

**Rules**

Fed. R. Civ. P. 26(d)(1) ........ 1, 24, 25
Fed. R. Civ. P. 65 ........ 10
Utah R. Prof. Cond. 1.6 ........ 24
Rule 1.6(b)(3) ........ 24

## I. INTRODUCTION

Over seven months after filing this case, Plaintiffs filed a Motion for Preliminary Injunction ("*Motion*") asking the Court to enter a preliminary injunction against Messner Reeves, LLP (the "MR law firm"). Plaintiffs effectively ask the Court for the extraordinary remedy of a prejudgment writ of attachment, including: (1) requiring the MR Firm to deposit certain (non-existent) funds into the registry of the Court; (2) alternatively, freezing those funds pending trial on the merits; or (3) requiring the MR Firm to identify where and to whom those funds were disbursed. Plaintiffs seek these extreme remedies even though their claims are strictly legal claims that seek money damages and even though there is a complete dearth of any evidence of irreparable harm—the single most important prerequisite for preliminary injunctive relief. Likewise, Plaintiffs have not demonstrated a substantial likelihood of success on the merits or that a balancing of the equities and advancing the public interest favor injunctive relief. Plaintiffs' request for an order requiring the MR Firm to disclose client-confidential information and identify the location of transferred funds and the identity of the transferees of the funds is an improper request for discovery before the time period permitted by Fed. R. Civ. P. 26(d)(1), which is not supported by good cause and is not necessary to prevent irreparable harm.

Plaintiff's *Motion* fails badly on every required element for a preliminary injunction. It comes nowhere close to meeting Plaintiffs' heightened burden of proving "clear and unequivocal" entitlement to relief. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 1188 (10th Cir. 2003) (cleaned up). The Court should deny the *Motion*.

## II. FACTS

The MR Firm incorporates the statement of the case from its motion to dismiss, ECF No. 171, pp. 4-7. Plaintiffs allege Torben Welch and the MR Firm represented INBE. *See* First Am.

Compl. ("*FAC*"), ECF No. 159, ¶ 17. Plaintiffs are five companies that entered into Business Expansion Line of Credit ("BELOC") agreements with INBE to obtain financing to expand their businesses. *Id.*, ¶¶ 35, 56. The BELOC agreement between Plaintiff Kosher Eats and INBE is attached as **Exhibit 1**. The BELOC agreements with other Plaintiffs were essentially identical. *See FAC*, ¶¶ 56-65. Among other things, the BELOC agreements provided: (1) INBE would loan the borrowers money for business expansion; (2) the borrowers were required to deposit 25% of the total loan amount to establish an Interest Control Account (ICA) before INBE would fund the loan; (3) the borrowers were required to wire their ICA deposits for INBE; and (4) the deposited ICA funds would "not be segregated …, may be comingled with other … funds, and may be utilized by [INBE]." *Ex. 1*, pp. 2-13, ¶ E; *id.*, p. 7, § 3.6. The BELOC agreements also expressly provided INBE would make advances from the ICA deposits and that the ICA funds could be "depleted" by those advances. *Id.*, p. 12, § 7.4. The BELOC also expressly provided it was ***only*** between INBE and Plaintiffs—there were expressly no "third party rights" and no third party obligations under the BELOC Agreement. *Id.*, p. 26, § 14.11. Plaintiffs' agreement with INBE expressly provided Plaintiffs' "sole remedy" for any breach by INBE was a default entitling Plaintiffs to (1) a "refund of the ICA payment[s];" (2) "release of all security interests granted by [Plaintiffs];" and (3) "terminate [Plaintiffs'] obligations to [INBE]" under the BELOCs. *Id.*, p. 24, § 13.7(b). Plaintiffs agreed with INBE that there would be no liability for non-parties to the agreement. *Id.*

Plaintiffs never had any agreements with the MR Firm. Although Plaintiffs repeatedly claim the MR Firm agreed to accept money in escrow and hold it ***for Plaintiffs***, Plaintiffs never had any communications with the MR Firm about any such "escrow" arrangement with the MR Firm, much less an escrow agreement. Likewise, Plaintiffs' allegation that they agreed to deposit the ICA deposits only because the BELOC agreements named the MR Firm as an entity that would

hold the funds is incorrect. The first agreement INBE prepared, in fact, nominated Byrd Campbell PA IOTA as the account name to where the funds would be wired. ECF No. 171-3, p. 57. One of the Plaintiffs, Homepeople Corporation, had wired its initial ICA payment to Byrd Campbell PA IOTA and then transferred that ICA payment. The only party Plaintiffs contracted with was INBE, the only parties they discussed funding with was INBE. The MR Firm is a law firm and not an escrow agent or in the business of serving as an escrow company that holds funds.

Between April 27 and July 7, 2023, Plaintiffs and others wired to the MR Firm, pursuant to the BELOCs terms, a collective amount of $10,070,000 for their respective ICA deposits. *FAC*, ¶¶ 47-57. INBE was supposed to fund the "first tranche of funding" for the loans "within 90 days" of the wired ICA deposits. *FAC*, ¶ 30. INBE funded the first tranche of funds for two borrowers, *id.*, ¶ 61, but did not fund any further tranches, including Plaintiffs. *Id.*, ¶¶ 53, 63-65.

Some of the Plaintiffs here, as well as other borrowers, sued INBE. *See Konala, LLC v. Messner Reeves, LLP et al.*, Case No. 24-CV-00195 (D. Utah 2024); *Kosher Eats, LLC v. Messner Reeves, LLP et al.*, Case No. 24-CV-05161 (C.D. Ca. 2024). Plaintiffs did not sue INBE here; only asserting claims against the MR Firm and all of its current and former partners and employed lawyers. Defendants have moved to dismiss Plaintiffs' First Amended Complaint for failure to state a claim. *See* ECF Nos. 170, 171 & 182. Those motions are fully briefed.

Now, seven months after filing this case, Plaintiffs filed their *Motion* with five Declarations from a representative of each Plaintiff. In each Declaration, the representatives describe their understanding of the BELOCs but do not dispute the BELOCs express terms. They acknowledge they reviewed and signed the BELOC agreements with INBE that specifically authorized the ICA deposits to be paid to the MR Firm for INBE. *See* ECF No. 203-1, ¶¶ 7-10; ECF No. 203-2, ¶¶ 6-10; ECF No. 203-3, ¶¶ 9-14; ECF No. 203-4, ¶¶ 9-18; ECF No. 203-4, ¶¶ 9-14.

Although Plaintiffs use inflamed rhetoric and accuse the MR firm of "theft," "fraud," "obfuscation," "peddling fabricated documents," and "violating ethical duties," the MR Firm disputes those conclusory allegations and most of the facts Plaintiffs allege. *Motion*, pp. 2-12. The MR Firm will disprove Plaintiffs' allegations if this matter proceeds beyond the motion to dismiss stage and the Court finds INBE waived its privilege. For the purposes of Plaintiffs' *Motion,* however, the MR Firm submits an Affidavit of Jim Smith who has personal knowledge of the MR Firm's management, operations and disbursements. *See* **Exhibit 2**, ¶¶ 1-6. Mr. Smith has confirmed that between April 21, 2023 and August 1, 2023, a total of $10,070,000.00 was deposited into the MR Firm COLTAF account for INBE. After INBE provided authorizations directly, or through authorized agents, to the MR Firm to disburse INBE's funds from the MR Firm account, the MR Firm complied with its client's direction and distributed the funds, resulting in the funds being fully disbursed. There are no funds remaining in the MR Firm account held for INBE. *Id.*, ¶ 7. None of the funds were disbursed to any individual at the MR Firm. *Id.*, ¶ 8.

The only facts before the Court demonstrate, without contravention, that the individuals at the MR Firm did not convert or use the funds Plaintiffs wired to INBE for their own purposes or to benefit any of the individuals at the MR Firm. The MR Firm was merely a conduit for INBE.

## III. APPLICABLE STANDARDS

Plaintiffs' *Motion* seeks an "extraordinary remedy" that should be granted sparingly because it is "the exception rather than the rule.'" *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citation omitted). To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) the threatened injury outweighs harm that the preliminary injunction may cause; and (4) an injunction would not adversely affect the public interest. *Gen. Motors Corp. v. Urb. Gorilla, LLC*,

500 F.3d 1222, 1226 (10th Cir. 2007) (citations omitted). A preliminary injunction should not be issued unless the movant's right to relief is "clear and unequivocal." *Heideman*, 348 F.3d at 1188.

Courts disfavor preliminary injunctions: (1) "that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" *Schrier v. Univ. Of Co*., 427 F.3d 1253, 1259 (10th Cir. 2005) (citations omitted). A movant seeking such an injunction must make a "heightened showing of the four factors." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009) (citation omitted). The status quo is "the last uncontested status between the parties which preceded the controversy." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 n.8 (10th Cir. 2001) (citation omitted). To determine the status quo, the Court must evaluate "the last peaceable uncontested status existing between the parties before the dispute developed.'" *Schrier*, 427 F.3d at 1260 (citation omitted).

The last peaceable uncontested status before Plaintiffs filed this case was: (1) Plaintiffs had transferred $10,070,000 in funds to pay the ICA deposits, *see* ECF No. 1, ¶¶ 57-58; (2) Plaintiffs did not receive the promised loan proceeds from INBE, *id*. ¶ 58; and (3) INBE had authorized distribution of all funds wired to the MR Firm. *Ex. 2*, ¶ 7. Even if Plaintiffs' *Motion* had merit (it does not), the MR Firm cannot transfer or freeze funds the MR Firm no longer possesses.

Plaintiffs ask the Court to alter the status quo by ordering the MR Firm to deposit INBE's funds into the Court's registry or to freeze those funds. By seeking to alter the status quo, Plaintiffs must satisfy the heightened burden required by *RoDa* and other cases. And this court must "more closely scrutinize" Plaintiffs' *Motion* "to assure that the exigencies of the case support ... a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

## IV. ARGUMENT

### A. The Court Lacks Authority to Freeze the Escrow Funds.

The Court "has 'no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication of [Plaintiff's] contract claim for money damages.'" *Prosper, Inc. v. Innovative Software Techs.*, 188 F. App'x 703, 705 (10th Cir. 2006) (quoting *Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)). More specifically, this Court lacks the "*inherent* authority to issue preliminary injunctions" to prevent "the transfer of assets in which the plaintiffs claim no pre-existing lien or equitable interest" in cases "seeking money judgments." *Niemi v. Lasshofer*, 728 F.3d 1252, 1257 (10th Cir. 2013) (citations omitted).

*Niemi* is directly on point. There, the plaintiffs sought to build a large condominium complex. When traditional financing proved hard to find, they sought alternative sources. They ultimately found a "shady" alternative source of funding from a person who ultimately was indicted and convicted of fraud and money laundering. Like Plaintiffs here, the plaintiffs in *Niemi* did not just name the alleged "shady" alternative source of financing – here, INBE – but also those who were involved unwittingly with the alternative source of financing. The plaintiffs brought RICO and other claims against the unwitting participants, demanding as much as $150 million in relief. The plaintiffs moved for a preliminary injunction, which the district granted, "effectively freezing the worldwide assets of [the individual and corporate] defendants and ordering them to deposit $2.18 million in escrow pending a final judgment." *Id.* at 1253-54.

The Tenth Circuit reversed, holding the District Court lacked inherent authority to issue a preliminary injunction freezing and directing the transfer of assets, citing the U.S. Supreme Court's decision in *Grupo Mexicano*. *Id.* at 1257, but noting that state law may provide such authority.

Plaintiffs do not cite a similar state law authorizing a preliminary injunction here. This Court should deny Plaintiffs' *Motion* based on *Niemi.*

Moreover, Plaintiffs claims here are legal claims seeking money damages. *See FAC*, pp. 24-41 (asserting RICO, negligence, breach of fiduciary duty and conversion claims); *id*. pp. 42-43 (prayer for relief). Plaintiffs do not seek replevin or return of specific assets to which they had a pre-existing lien. *Id.* Thus, under *Niemi* and *Grupo Mexicano,* this Court has no authority to enter the preliminary injunction Plaintiffs seek. *Grupo Mexicano*, 527 U.S. at 325.

Plaintiffs rely on *AAAG-California, LLC v. Kisana*, 439 F.Supp.3d 1265 (D. Utah 2020), but that case is inapposite. There, plaintiff was an auto auction house that had a lien on and retained the paper titles to 43 cars it sent to the defendants. The defendants subsequently worked with an employee of AAAG to steal the cars' titles, enabling them to take ownership of the cars without payment. The court ruled that "a constructive trust and related remedies [were] available in these circumstances to restore [plaintiff] to the position it would have had but for the theft," which was ownership of the cars. *Id.*, at 1269-1270. The court noted the plaintiff's claims there were equitable, at least in part, because the plaintiff was seeking return of tangible assets and there was "property that is traceable to the wrongful act—namely the cars . . ." *Id.*, at 1275.

Here, unlike the cars in *Kisana*, Plaintiffs did not transfer tangible assets to the MR Firm to which they had any lien. Further, any freeze order, even if entered, could not have the same effect as the order in *Kisana* because INBE already authorized transfer of the funds so there is nothing to freeze. Moreover, as explained in Section IV(3)(A)(1) below, Plaintiffs cannot demonstrate that the MR Firm wrongfully retains specific property belonging to them that can be traced to the alleged wrongful behavior, so Plaintiffs cannot demonstrate what the plaintiff in *Kisana* demonstrated—"theft of the titles and the conversion of the cars." *Kisana*, 439 F.Supp.3d

at 1275. Thus, the Court should apply *Grupo Mexicano* and conclude it has "no authority to issue [the] preliminary injunction" Plaintiffs request. *Prosper, Inc.*, 188 F. App'x at 705.

**B. Assuming *Arguendo* the Court Has the Authority to Enter the Preliminary Injunction Plaintiffs Request, the Court Should Deny Plaintiffs *Motion* Because Plaintiffs Have Not Satisfied Their Heightened Burden of Showing All Four Required Elements.**

Plaintiffs have a heightened burden to prove four elements, *Schrier*, 427 F.3d at 1260, which are: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp.*, 500 F.3d at 1226. The Court must deny Plaintiffs' *Motion* because Plaintiffs have not satisfied their burden of establishing each element.

**1. Plaintiffs Have Not Demonstrated Irreparable Harm.**

The second element requires Plaintiffs to satisfy a heightened burden of demonstrating "irreparable harm to [Plaintiffs] if the injunction is denied." *Gen. Motors Corp.*, 500 F.3d at 1226. The MR Firm discusses this element first because it is "the single most important prerequisite" to preliminary injunctive relief. *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (cleaned up). "A party's harm is irreparable 'when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.'" *Schiermeyer v. Thurston*, 697 F.Supp.3d 1265, 1269 (D. Utah 2023) (quoting *Dominion*, 269 F.3d at 1156). As the movants, Plaintiffs "must show more than the mere 'possibility' of such harm—rather, [they] must 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, (2008)). Plaintiffs must also show that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d

at 1189 (cleaned up). These requirements are stringent and not "easy . . . to fulfill." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (citation omitted).

Here, the Court should deny Plaintiffs' *Motion* because Plaintiffs cannot satisfy their heavy burden of demonstrating irreparable harm. Plaintiffs' claims all allege economic losses due to the ICA deposits not being returned or the BELOC loans not being fulfilled by INBE. Plaintiffs principally seek compensatory damages in the form of a money judgment. *See FAC*, pp. 42-43. "It is . . . well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman*, 348 F.3d at 1189 (citation omitted). Irreparable harm generally is not demonstrated when, as here, the "alleged wrong already occurred" and "the asserted injury . . . is an economic loss." *Schiermeyer*, 697 F.Supp.3d at 1271.

Here, Plaintiffs argue there is a risk of dissipation of assets, which they assert could be sufficient to demonstrate irreparable harm. *Motion*, p. 18. Plaintiffs' argument is unsupported by either the law or the facts. First, the law requires Plaintiffs to establish a reasonable likelihood of dissipation of assets "in the absence of an injunction," not just a possibility. *Winter,* 555 U.S. at 22. Furthermore, as explained above, there were no funds remaining in the account held for INBE when Plaintiffs filed this case because INBE and its agents already had directed the MR Firm to make distributions from INBE's funds that exhausted the funds held. *Ex. 2*, ¶¶ 7-8. Thus, there is no likelihood of further dissipation of assets in the absence of an injunction.

Second, the law Plaintiffs cite does not support a finding of irreparable harm here. Plaintiffs first cite *Fed. Deposit Ins. Corp. v. Antonio*, 649 F.Supp. 1352 (D. Colo. 1986), *aff'd*, 843 F.2d 1311 (10th Cir. 1988), which was a case brought by the FDIC against defendants who engaged in "a 'heist money' scheme to use $3,000,000.00 of the bank's assets in an attempt to purchase $9,000,000.00 in stolen currency," resulting in the bank failing. *Id.* at 1353. Some defendants

stipulated to a preliminary injunction, while others " invoked the Fifth Amendment rather than testify." *Id.* at 1355. The court made "strong inferences … from these failures to challenge the evidence presented by the FDIC," and found the FDIC's evidence "overwhelming" and sufficient to demonstrate "a systematic effort to hide [the dental defendant's] assets in secret bank accounts," to obtain "a sham divorce," and then convey "assets to his former wife and other relatives." *Id.* Unlike *Antonio,* Plaintiffs have presented no evidence of hiding assets, transfer of assets beyond the Court's reach, or secret bank accounts. *Antonio* does not support Plaintiffs' *Motion.*

Plaintiffs also cite *Resol. Tr. Corp. v. Cruce*, 783 F.Supp. 1309 (D. Kan.), *aff'd*, 972 F.2d 1195 (10th Cir. 1992), which authorized an asset freeze specifically authorized by Congress in the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990. *Id.* Critically, that statute allows the Resolution Trust Corporation (RTC) to obtain a preliminary injunction "'without regard to the requirement of [Fed. R. Civ. P. 65] that the applicant show that the injury, loss, or damage is irreparable and immediate.'" 783 F. Supp. at 1311 (quoting 12 U.S.C. § 1821(19)(A)). This is not a failed savings and loan case nor does it involve the statutory powers Congress provided to the RTC. Further, unlike *Cruce*, this is not a case where the preliminary injunction seeking an asset freeze is directed at defendants who engaged in "criminal activities [for] which they pled guilty and were sentenced," nor evidence that the defendant caused "damages in excess of $148 million" which may not be satisfied because of the defendants' incarceration. *Id.*at 1311-1312. Plaintiffs' reliance on *Cruce* is misplaced.

Here, Plaintiffs have not presented any evidence that the MR Firm "would *likely* be unable to pay an award of money damages after a trial" if Plaintiffs prevail, which is required. *Schiermeyer*, 697 F.Supp.3d at 1273. Plaintiffs have not presented any evidence that the MR Firm is insolvent or "that the risk of insolvency is likely and imminent." *Id.* (citation omitted). Awarding

injunctive relief to Plaintiffs based on the argument that the MR Firm "might 'spend' the escrow monies and later become insolvent" would be improper because such "purely speculative allegations . . . push the standard for injunctive relief beyond its reasonable limit." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010).

Relying on *Dominion Video*, 269 F.3d at 1156-57, Plaintiffs argue they may suffer "loss of reputation, goodwill and the ability to meet contractual obligations," amounting "to irreparable harm." *Motion*, p. 19. Plaintiffs' argument is flawed. First, unlike this case, the movant in *Dominion* sought an injunction to preserve the status quo, which rendered the "heightened burden ... inapplicable." 269 F.3d at 1155. Second, unlike this case, the movant established a loss of 500 subscribers and a high probability that a satellite TV provider's refusal to activate Dominion subscribers would damage Dominion's reputation, especially after Dominion told subscribers their satellite dish would be activated within 3 days after purchase. *Id.* at 1156. Further, the movant demonstrated that although a damages award may remedy "lost income," it could not remedy the ongoing loss or credibility to the movant in the relevant marketplace. *Id.* at 1157.

Here, a heightened burden applies to Plaintiffs' *Motion*. *Schrier*, 427 F.3d at 1260. Plaintiffs' generalized reference to loss of reputation and goodwill caused by past conduct too speculative and to find a probability of future irreparable harm, which would justify a preliminary injunction. *See DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1272 (10th Cir. 2018) (affirming denial of preliminary injunction when movant "had not shown a sufficient probability of irreparable harm from Defendants' past misconduct ... [and] failed to show how [defendants' conduct] gave rise to future irreparable harm."); *Keybank Nat'l Ass'n v. Williams*, No. 20-1384, 2022 WL 402379, at *4 (10th Cir. Feb. 10, 2022) (affirming denial of preliminary injunction based on claimed "intangible injury in the form of diminished customer relationships, goodwill, and

competitive standing"); *Schrier*, 427 F.3d at 1267 (affirming denial of preliminary injunction when movant did not present compelling evidence "showing actual or significant risk of loss of prestige, academic reputation or professional opportunities that cannot be remedied by money damages.").

Moreover, Plaintiffs waited over seven months after filing this suit to file their *Motion*. "As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994) (citation omitted). The Court can consider this delay as a "factor in the irreparable harm analysis." *RoDa*, 552 F.3d at 1211; *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (delay is factor to be considered on motion for preliminary injunction); *Schiermeyer*, 697 F.Supp.3d at 1270 (undue delay can weigh heavily against a party seeking preliminary relief).

The Court should consider Plaintiffs' seventh-month delay in seeking a preliminary injunction and conclude Plaintiffs have not proven irreparable harm. *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F.Supp.2d 1201, 1220–1222 (D. Utah 2004), *aff'd*, 425 F.3d 1249 (10th Cir. 2005) (three-month delay before moving for preliminary injunction "belies any irreparable injury to their rights."). Plaintiffs' delay—combined with the absence of any evidence that the MR Firm's actions in disbursing INBE's funds at INBE's request could give rise to future harm incapable of being remedied by money damages—is sufficient to find Plaintiffs have not sustained their heightened burden of demonstrating irreparable harm. The Court should deny Plaintiffs' *Motion.*

**2. Plaintiffs Have Not Demonstrated Substantial Likelihood of Success on their Claims Against Messner Reeves, LLP.**

The first preliminary injunction factor requires Plaintiffs to demonstrate a substantial likelihood of success on the merits of their claims. *Gen. Motors Corp.*, 500 F.3d at 1226. If Plaintiffs fail this element, their *Motion* must be denied. *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 778 (10th Cir. 2009) (affirming denial of preliminary injunction because

Oklahoma could not demonstrate "likelihood of success on the merits, the first factor required for preliminary injunctive relief."); *Klein-Becker USA, LLC v. Prod. Quest Mfg., Inc.*, 429 F.Supp.2d 1248, 1252 (D. Utah 2005) (denying injunction because "Plaintiff has failed to meet its burden of a strong showing of likelihood of success on the merits . . ."). Plaintiffs have asserted claims against the MR Firm for conversion, negligence, and breach of fiduciary duty. *FAC*, pp. 28-42.[1] Plaintiffs have not demonstrated a substantial likelihood of success on the merits of these claims.[2]

**a. Conversion.**

"The elements of conversion . . . are: "'[1] an act of willful interference with property, [2] done without lawful justification, [3] by which the person entitled to property is deprived of its use and possession,' and [4] that the party 'is entitled to immediate possession of the property at the time of the alleged conversion.'" *Combs v. SafeMoon LLC*, No. 2:22-CV-642, 2024 WL 1347409, at *35 (D. Utah Mar. 29, 2024) (unpublished) (quoting *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶ 11, 338 P.3d 222). Conversion "does not … require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right." *Allred v. Hinkley*, 328 P.2d 726, 728 (1958).

Here, Plaintiffs allege "Messner Reeves willfully interfered with Plaintiffs' ICA deposit,"

---

[1] Plaintiffs also assert a RICO claim against the Individual Defendants, ECF No. 159, ¶¶ 99- 110, and a RICO conspiracy claim against Torben Welch and Jake Brigham. *Id.*, ¶¶ 111-120. The Supreme Court has declined to decide whether a "private plaintiff in a civil RICO action is entitled to injunctive relief under 18 U.S.C. § 1964," *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 411 (2003), but the majority of the circuits have held 18 U.S.C. § 1964 does not authorize private RICO plaintiffs to sue for prospective injunctive relief. *See Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021); *In re Fredeman Litig.*, 843 F.2d 821, 828 (5th Cir. 1988); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986); *but see Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687, 700 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393. This Response does not address Plaintiffs' RICO claims because Plaintiffs did not address them in their *Motion*.

[2] The MR Firm addressed the lack of merit to each of these claims in its motion to dismiss. *See* ECF 173, pp. 19-24, incorporated by reference here.

they "were entitled to the property, their ICA deposit funds," were "deprived of its use and possession," and "sustained incidental and consequential damages in excess of $10,000,000" when INBE did not return the money to them after their demands. *FAC*, ¶¶ 123-126. Plaintiffs did not allege specific tangible property that was converted—only money. Although "[m]oney may be the subject of conversion," it may only be the subject of a conversion claim "when the party charged wrongfully received it." *State v. Twitchell*, 832 P.2d 866, 870 (Utah Ct. App. 1992).

Plaintiffs did not allege the MR Firm wrongfully received the money. To the contrary, they have averred under oath that they signed the BELOC agreements with INBE expressly authorizing the ICA deposits to be paid to the MR Firm for INBE. *See* ECF No. 203-1, ¶¶ 7-10; ECF No. 203-2, ¶¶ 6-10; ECF No. 203-3, ¶¶ 9-14; ECF No. 203-4, ¶¶ 9-18; ECF No. 203-5, ¶¶ 9-14. By agreeing to the BELOCs' terms, Plaintiffs consented to: (1) send their funds for the ICA deposit "by bank wire to [INBE];" (2) once wired, the funds belonged to INBE; (3) the deposited ICA funds "need not be segregated by [INBE], may be comingled with other [INBE] funds, and may be utilized by [INBE];" and (4) there were no "third party rights" and no third party obligations under the BELOC Agreement. *Ex. 1*, pp. 2-13, ¶ E; *Id.*, p. 7 & 26, §§ 3.6. & 14.11

In *Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC,* 2018 UT App 31, 424 P.3d 937, *vacated as moot*, 2019 UT 69, 456 P.3d 731, the court considered a similar issue. There, the plaintiff judgment creditors initiated a lawsuit against the law firm that represented the judgment debtors, bringing claims under UUFTA. 2018 UT App 31, ¶ 7. The court determined that the law firm could not be liable for releasing funds at the request of the client, explaining:

> Here, it is undisputed that Debtors were Law Firm's clients and that the $50,000 was placed in Law Firm's trust account not its business account, indicating that Law Firm held the $50,000 in a fiduciary capacity for Debtors. Thus, based on Law Firm's ethical obligations with respect to funds placed in its trust account, we conclude that Law Firm did not have the requisite legal dominion (or control) over the $50,000, because Law Firm "had no legal right to put the funds to its own use."

> *See In re Coutee*, 984 F.2d 138, 141 (5th Cir. 1993). Consequently, Law Firm "lacked the requisite dominion" required to be the first transferee of the funds under subsection 25-6-9(2) of the Act. *See id.* And because Law Firm was not the first transferee of the $50,000, "there was no transfer giving rise to liability" on the part of Law Firm. *See Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 166 (Tex. App. 1996).

2018 UT App 31, ¶ 27.

The same analysis applies here. INBE and Plaintiffs each agreed that Plaintiffs would send their funds for the ICA deposit "by bank wire" to INBE, via the MR Firm's trust account, without any correlating agreement between the Plaintiffs and the MR Firm that obligated the MR Firm to act as escrow agent for Plaintiffs. *FAC*, ¶¶ 38-41. INBE was the MR Firm's client; Plaintiffs were not. *Id.*, ¶ 26. Thus, the MR Firm "did not have the requisite legal dominion (or control) over" Plaintiffs' funds because they were acting as agents for INBE, who owned the funds after the Plaintiffs' wire transfers. *Timothy*, 424 P.3d at 945. Thus, the Firm cannot be liable for conversion.

In their *Motion*, Plaintiffs do not refute any of these arguments advanced by the MR Firm in its motion to dismiss, ECF No. 173, pp. 22-24. Instead, they cite two cases and advance unsupported factual arguments that do not show a substantial likelihood of success.

First, they cite two inapposite cases: *Lawrence v. Intermountain, Inc*., 2010 UT App 313, ¶ 15, 243 P.3d 508, 514; and *Rand*, 2014 UT App 246, ¶¶ 12-16, 338 P.3d at 225-226. Both cases predate *Timothy*, and neither involved express authorization for a law firm to hold funds for its client. Plaintiffs' reliance on *Lawrence* and *Rand* is misplaced.

Second, Plaintiffs' factual arguments do not establish a substantial likelihood of success on their conversion claim. They argue that their ICA deposits were done "under an agreement which explicitly required these funds to remain under Messner Reeves' 'sole possession and control' unless INBE met its loan obligations." *Motion*, p. 14. Although Plaintiffs did not cite in their *Motion* what they are quoting, it appears they are quoting from Exhibit F to the BELOC:

> **Contractual Guarantee on ICA Advance Fee:**
> In the event that Lender is unable to arrange for the issuance of funding as per this agreement, the lender contractually agrees to reimburse the Borrower the amount of their ICA Advance Fee. Such agreement is contractual in nature, and is not collateralized in any manner with any funds other than the ICA Advance Fee, which shall be in Trustee's sole possession and control. The Lender agrees none of the Indemnitees shall be liable in any manner should Trustee fail to return the ICA Advance Fee per his contractual obligations with the Lender, although the Lender does agree to use its best efforts, including legal efforts, to recover the ICA Advance Fee should Trustee fail to return it per his contractual agreement with the Lender. For avoidance of doubt, in the event we're unsuccessful at recovering ICA Funds from the Trustee, INBE Capital LLC will step in and reimburse the Borrower the full amount of ICA Funds within 90 days.

*Ex. 1,* at Ex. F. This provision is a contractual arrangement between INBE and Plaintiffs; not the MR Firm. Moreover, it must be interpreted in harmony with Plaintiffs' agreement with INBE that the ICA funds "need not be segregated by [INBE], may be comingled with other [INBE] funds, and may be utilized by [INBE]," *Ex. 1*, § 3.6, and there were no "third party rights" or third party obligations imposed by the BELOCs. *Id.*, p. 26, § 14.11. If INBE used the funds improperly, Plaintiffs' remedy is a breach of contract recovery from INBE. But Plaintiffs do not have a conversion claim against the MR Firm because the MR Firm was holding INBE's funds to be distributed at INBE's or INBE's agents' directions, and the MR Firm's duties were toward its client, INBE, and not Plaintiffs. *Timothy*, 2018 UT App 31, ¶ 27.

Further, Plaintiffs argue they "are legally entitled to their escrow money." *Motion*, p. 14. Plaintiffs, indeed, may be legally entitled to a return of their escrow money if they sue INBE and establish a breach of the BELOC agreements. Another party to a BELOC already obtained a default against INBE and has moved for a default judgment against INBE. *See* Motion for Default Judgment, ECF No. 33, *Konala, LLC v. Messner Reeves, LLP et al.*, Case No. 24-CV-00195 (D. Utah 2024). But being "legally entitled to their escrow" money wired to INBE does not create a conversion claim against the MR Firm, which was a mere conduit holding the money Plaintiffs wired to INBE to be "utilized by [INBE]" as INBE directed. *Ex. 1,* § 3.6; *Timothy*, 2018 UT App

31, ¶ 27.[3] Plaintiffs have not demonstrated a substantial likelihood of success.

**b. Negligence.**

Plaintiffs' second state law claim against the MR Firm is a claim for negligence. *FAC*, pp. 32-36. Plaintiffs' negligence claims fail because the MR Firm owed no duty to Plaintiffs, who were not clients. ECF No. 173, pp. 19-20; *see also BMF Advance, LLC v. Litscape, LLC*, 637 F.Supp.3d 1272, 1286 (D. Utah 2022) (granting law firm's motion to dismiss and holding law firm had no duty under Utah law to protect interest of non-clients who wired funds to law firm).

In their *Motion*, Plaintiffs do not distinguish or even cite *BMF Advance*. Plaintiffs also do not challenge the fact that the BELOC agreements they signed expressly provided the ICA funds they wired "**may be utilized by [INBE]**" as INBE directed. *Ex. 1*, p. 7, § 3.6 (emphasis added).

Instead, Plaintiffs argue an "escrow agent has a duty to each party to hold escrow funds and release them only when the conditions specified in the escrow agreement for their release have been satisfied." ECF No. 203, p. 15. Plaintiffs' argument fails because it is premised on the existence of an escrow agreement between Plaintiffs and the MR Firm. *See Cooper Enterprises, PC v. Brighton Title Co., LLC*, 2010 UT App 135, ¶ 11, 233 P.3d 548 (cited by Plaintiffs; noting

[3] *See also Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 306, 222 A.3d 649, 661 (2020) (ordering conversion claim against law firm dismissed because "[f]unds held in an attorney's trust account for its client are the client's funds, not the firm's," and firm acts "appropriately in adhering to the client's directions concerning funds over which the firm did not have independent ownership or interest); *Papageorge v. Zucker*, 169 A.3d 861, 865 (D.C. 2017) (dismissing plaintiff's conversion claim against attorney who represented his acquaintance and co-tenant because plaintiff "signed a contract with [his acquaintance] and his cotenant that gave him a right to the proceeds from the tenants' wrongful eviction claims, but this right was a contractual right enforceable against [the acquaintance] and the cotenant, not a property right enforceable against whomever might be in possession of those proceeds," which was the law firm); *Cf. Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993) (law firm not liable under preferential transfer section of bankruptcy code because law firm was mere conduit, "had no legal right to put the funds to its own use, and thus lacked the requisite dominion required to be the initial transferee."); *PHI Fin. Servs., Inc. v. Johnston L. Off., P.C.*, 2016 ND 20, ¶ 17, 874 N.W.2d 910, 917 (law firm not liable to secured creditor for transferring funds to debtor's father because law firm was mere conduit of its client's funds).

an escrow relationship requires an "agreement" between depositor); *New W. Fed. Sav. & Loan Ass'n v. Guardian Title Co.*, 818 P.2d 587, 589 (Utah Ct. App. 1991) (cited by Plaintiffs; noting defendant stipulated it agreed "to act as escrow and closing agent").

Plaintiffs argue the BELOC agreement "expressly states that Plaintiffs' escrowed funds would remain in Messner Reeves' 'sole possession and control,'" and because the MR Firm revised the draft BELOC agreements INBE sent, the MR Firm somehow "assume[ed] the role of escrow agent." *Motion*, p. 15. Plaintiffs' argument fails, again, because Plaintiffs were not parties to any escrow agreement with the MR Firm. There were no escrow instructions in the BELOCs and they expressly disclaimed "third party rights" or third party obligations. *Ex. 1*, p. 26, § 14.11.

Plaintiffs have not alleged some separate escrow agreement between INBE and the MR Firm of which Plaintiffs could be third party beneficiaries. *See Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶¶ 32-40, 355 P.3d 965 (considering whether "lenders who are not formal parties to the escrow transaction but who are identified as intended beneficiaries" could assert claim against title company for breach of fiduciary duty based on escrow agreement between buyer and seller of real estate). The BELOCs did not impose any requirement on the MR Firm to follow certain instructions, unlike the agreement at issue in *Orlando*. *See* 2015 UT 55, ¶¶ 38-39. Further, the *Orlando* court based its decision on the fact that the title company's duties to the lender, as a third-party beneficiary, were consistent with the law imposing such fiduciary duties on title companies. 2015 UT 55, ¶ 40 n. 5.

Here, however, Plaintiffs' attempt to impose fiduciary duties upon the MR Firm, as a nonparty to the BELOC agreements, would be *inconsistent* with Utah law, which soundly rejects the proposition that a law firm or lawyer owes fiduciary duties to nonclients. *BMF*, 637 F.Supp.3d at 1282, 1286 (holding "law firm does not have a special relationship with a third party" and as a

result, owes no duty to third parties after receiving funds "as part of its client's transaction") (citing *Hughes v. Housley*, 599 P.2d 1250, 1254 (Utah 1979)); *Smoot v. Lund* 369 P.2d 933, 936 (Utah 1962) ("Where an attorney is hired solely to represent the interests of a client, his fiduciary duty is of the highest order and he must not represent interests adverse to those of his client."); *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct. App. 1996) ("As fiduciaries, attorneys have a legal duty to represent the client with undivided loyalty" (internal quotation omitted)); *Shaw Res. Ltd, LLC v. Pruitt, Gushee & Bachtell, P.C.*, 2006 UT App 313, ¶ 28, 142 P.3d 560 ("[A]ttorneys must be completely loyal to their clients."); *Nat'l Sav. Bank of D.C. v. Ward*, 100 U.S. 200, 199, 25 L.Ed. 621 (1879) ("Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party."). Plaintiffs have not demonstrated a substantial likelihood of success under this settled law. Indeed, the Court must dismiss Plaintiffs' negligence claims for failure to state a claim. *See* ECF No. 173, pp. 19-20.

**c. Breach of Fiduciary Duty.**

Plaintiffs' third state law claim asserts duplicate claims for breach of fiduciary duty. *FAC*, pp. 37-42. Plaintiffs have not demonstrated a substantial likelihood of success on this claim for the same reasons identified above – the MR Firm did not owe a fiduciary duty to the nonclient Plaintiffs. *See* cases cited immediately above. Plaintiffs do not attempt to distinguish any of these authorities in their *Motion*, arguing only that an escrow agent owes fiduciary duties. Plaintiffs ignore that the MR Firm never agreed to act as an escrow agent. Moreover imposing a duty on the MR Firm to act as an escrow agent would be inconsistent with Utah law because the MR Firm's duties ran only to its client. The MR Firm was required to take its client's direction about disbursement of the funds, which INBE had the contractual right to "utilize." *Ex. 1*, p. 7, § 3.6.

Additionally, even if the Court assumes for argument's sake that the MR Firm owed some

fiduciary duty to Plaintiffs, the authorities upon which Plaintiff rely clarify that the scope of any such duty would be only to follow the escrow agreement's "instructions." *Pyper v. Reil*, 2018 UT App 200, ¶ 23, 437 P.3d 493, 499 (citing and *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 19, 222 P.3d 775). The duty does not include " the affirmative obligation to detect and halt a potentially fraudulent transaction." *Pyper*, 2018 UT App 200, ¶ 24 (citing *Schoepe v. Zions First Nat'l Bank*, 750 F.Supp. 1084, 1086-89 (D. Utah 1990)). Plaintiffs simply err when they argue the MR Firm could be liable for disbursing funds at the direction of INBE or INBE's agents because the MR Firm owed no "affirmative duty" to halt those transactions. The Court should dismiss Plaintiffs' fiduciary duty claims, as the MR Firm requested. ECF No. 173, pp. 20-22.

**d. Conclusion.**

As demonstrated, Plaintiffs have not met their heavy burden of showing a likelihood of success on the merits of their claims against the MR Firm. Thus, the Court should deny Plaintiffs' *Motion*. *Tyson Foods, Inc.*, 565 F.3d at 778; *Klein-Becker USA, LLC*, 429 F. Supp. 2d at 1252.

**3. The Balance of Harms Weighs Against a Preliminary Injunction.**

"The third preliminary-injunction factor involves balancing the irreparable harms identified . . . against the harm that the preliminary injunction causes" the MR Firm. *Free the Nipple-Fort Collins*, 916 F.3d at 806 (citing *Fish*, 840 F.3d at 754). "Under the heightened disfavored-injunction standard, the Plaintiffs need to make a strong showing that the balance of harms tips in their favor." *Id.* (citation omitted). The Court need not engage in significant analysis of this factor once the Court determines that Plaintiffs have not demonstrated a likelihood of irreparable harm or reasonable probability of success on the merits. *See People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017); *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1255

(10th Cir. 2017); *see also State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021) (when failure to satisfy one factor is dispositive, court need not consider other factors.).

In any event, the third factor does not balance in favor of a preliminary injunction here. Plaintiffs argue the equities balance in their favor because they "may face complete financial ruin…." *Motion*, p. 19 (citing *Lyons v. Jefferson Bank & Tr.*, 781 F.Supp. 1525, 1531 (D. Colo. 1992)). But that "ruin" of which they complain was due to INBE's directives to the MR Firm to disburse the funds, not the MR Firm holding the funds while awaiting INBE's direction. Plaintiffs' concerns are best directed at INBE, who Plaintiffs chose not to sue here.

Moreover, *Lyons* is inapposite because there, the defendant "withdrew its funds" and transferred nearly $43 million in funds to avoid a federal court freeze order entered two hours later. 781 F.Supp. at 1529. There are no similar facts here. The MR Firm transferred INBE's money at INBE's direction before Plaintiffs ever filed suit. If Plaintiffs desired to prevent INBE from authorizing transfer of the ICA deposits that Plaintiffs agreed "may be utilized by INBE," BELOC, p. 7, § 3.6, it needed to sue INBE and seek immediate relief against INBE, the owner of the funds.

The Court should also deny Plaintiffs' *Motion* insofar as it seeks to restrain the MR Firm's use of its money prior to a final judgment because as unsecured creditors, Plaintiffs have no right to a preliminary injunction and are limited to state prejudgment attachment and related procedures. *Prosper, Inc. v. Innovative Software Techs.*, 188 F. App'x 703, 705 (10th Cir. 2006) (citing *Grupo Mexicano*, 527 U.S. at 330-31, 119 S.Ct. 1961); *see also Tillery v. Leonard & Sciolla, LLP*, 437 F.Supp.2d 312, 330 (E.D. Pa. 2006) (finding harm to defendant law firm, although they would "not be great," were greater and outbalanced plaintiff's interest); *cf. Heideman*, 348 F.3d at 1191 (concluding "the balance of hardships in this case is fairly even").

**4. The Public Has Little to No Interest in this Purely Private Dispute.**

The final preliminary injunction factor is whether an injunction will adversely affect the public interest. *Gen. Motors Corp.*, 500 F.3d at 1226. The Court also need not consider this element because of Plaintiffs' failure to demonstrate irreparable harm and a reasonable probability of success on the merits. *New Mexico Dep't of Game & Fish*, 854 F.3d at 1255.

Here, Plaintiffs had a contract with INBE and the "public has a strong interest in holding private parties to their agreements." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017). But that interest is not implicated here because Plaintiffs are not suing INBE. Enjoining the MR Firm will not serve any public interest and "will not remedy any identifiable wrong against Plaintiffs," *Noodles Dev., LP v. Ninth St. Partners, LLP*, 507 F.Supp.2d 1030, 1039 (E.D. Mo. 2007), because the MR Firm does not have any money Plaintiffs paid to INBE for the ICA deposits. The funds were disbursed at INBE's or its agent's direction.

Plaintiffs argue the public has an interest in enforcing fiduciary duties. *Motion*, pp. 21-22 (citing *Dines v. Comerica Bank & Tr., N.A.*, No. 22-CV-0403-WJM, 2022 WL 488605, at *3 (D. Colo. Feb. 17, 2022), and *Bokf, N.A. v. Condon*, No. 19-CV-01044-PAB, 2019 WL 13195203, at *4 (D. Colo. Apr. 17, 2019)). *Dines* involved a specific statute enacted by the legislature, which demonstrated the public interest, but which is not applicable here. 2022 WL 488605, at *3 (relying upon C.R.S. § 15-5-801). *Condon* involved the public interest in ensuring that a departing employee did not use "customer and referral source contact information" to compete with his former company, 2019 WL 13195203, at *4, which also is not present in this case.

Relying on *Kisana*, 439 F. Supp. 3d at 1281, Plaintiffs argue the "public has a vested interest in preventing fraud and holding wrongdoers accountable for their actions. *Motion*, p. 22. In *Kisana,* however, there was unrefuted evidence the defendants "worked with an employee of AAAG to steal the cars' titles, enabling them to take ownership of the cars without payment." 439

F.Supp.3d at 1269. Plaintiffs have presented no similarly unrefuted evidence. More critically, Plaintiffs have not presented any evidence beyond speculative affidavits that demonstrates a harm incapable of being remedied by a money judgment, if Plaintiffs could establish liability. *Snyder v. Am. Kennel Club*, 575 F.Supp.2d 1236, 1240 (D. Kan. 2008) ("A party seeking a preliminary injunction must make its case not by mere allegations, but by clear proof.").

Citing the "Independent Escrow Agents" section of Utah's Financial Institutions Act, Utah Code Ann. § 7-22-101 *et seq.*, Plaintiffs claim a strong interest in regulating escrow transactions. *Motion*, p. 22. Plaintiffs' argument fails because the MR Firm is not an entity subject to the jurisdiction of the Department of Financial Institutions. Utah Code Ann. § 7-1-103.[4] Similarly, the MR Firm is not an escrow agent under Utah's Insurance Code. *See* Utah Code Ann. § 31A-1-301(65). Thus, a preliminary injunction would not advance any public interest of regulating escrow agents, as Plaintiffs claim. Nor would a preliminary injunction advance a public interest in "enforcing escrow agreements" as Plaintiffs claim, *Motion*, p. 22, because Plaintiffs did not have an escrow agreement with the MR Firm and the MR Firm did not become an escrow agent through

---

[4] Utah Code Ann. § 7-22-101(1)(b) is part of the Financial Institutions Act, which the legislature enacted to regulate financial institutions and associated financial services through the Department of Financial Institutions. *See* Utah Code Ann. § 7-1-102(1). The MR Firm is not an "escrow company" under the Act. *See* Utah Code Ann. § 7-1-501(2)(g). Similarly, the MR Firm is not an "escrow agent" under the portion of the Act that regulates independent escrow agents. *See* Utah Code Ann. § 7-22-101(1)(b) ("'Escrow agent' means a person that provides or offers to provide escrow services to the public."). Thus, the statutory duties the Act imposes on independent escrow agents, which Plaintiffs cite, do not apply to the MR Firm. Utah Code Ann. § 7-22-108(1)-(2). Even if they applied to the MR Firm generally, they would not impose any obligation upon the MR Firm to Plaintiffs because Subsection (1) requires any "funds" to be "paid from trust accounts only **in accordance with the terms and conditions of the escrow agreement**," while Subsection (2) requires all "other assets or property received by an escrow agent **in accordance with an escrow agreement** [to] be maintained in a manner which will reasonably preserve and protect the property from loss, theft, or damage, and which will otherwise comply with all duties and responsibilities of a fiduciary or bailee generally." *Id.* (emphasis supplied). Plaintiffs have not presented any evidence that there was an escrow agreement between Plaintiffs and MR.

Plaintiffs' agreement with INBE. *See* Section IV(B)(2)(c), *supra.*

Simply, Plaintiffs' interests in this case are purely private to Plaintiffs who have a remedy at law and have not demonstrated irreparable harm. The Court should deny Plaintiffs' *Motion. Dominion*, 269 F.3d at 1156; *Schiermeyer*, 697 F. Supp. 3d at 1269; *see also Lane v. Buckley*, 643 F. App'x 686, 689 (10th Cir. 2016) (injunction seeking "to forestall purely economic harm … generally is insufficient to constitute irreparable harm.") (citation omitted).

**C. The Court Should Deny Plaintiffs' Request for a Mandatory Order to Identify to Whom and Where Funds Were Transferred.**

Finally, Plaintiffs request an Order "[r]equiring Messner Reeves to disclose the location of transferred funds," claiming such an order would impose "no new duty but ensures transparency regarding assets that should have remained in escrow." *Motion,* p. 25. Plaintiffs cite no law for their request, which would be a prohibited mandatory injunction, because there is no legal basis.

The MR Firm's duty ran to its client; not Plaintiffs. *See* Section IV(B)(2)(b)-(c) above. The MR Firm may not disclose information relating to its representation of INBE subject to certain exceptions inapplicable here. *See* Utah R. Prof. Cond. 1.6; *Spratley v. State Farm Mut. Auto. Ins. Co*., 2003 UT 39, ¶¶ 14-21, 78 P.3d 603 (discussing Rule 1.6 and finding exception contained in Rule 1.6(b)(3), inapplicable here, allowed limited disclosure of information relating to representation of client in suit by former in-house counsel for wrongful discharge).

Further, Plaintiffs' request for an order compelling the MR Firm to disclose the location of transferred funds and the identity of the transferees is an improper request for discovery before the Court assures itself of subject matter jurisdiction, through the dismissal motions, and before the period permitted by Fed. R. Civ. P. 26(d)(1). Plaintiffs must show "good cause for the requested departure from usual discovery procedures." *Am. Equip. Sys., LLC v. Chester*, No. 2:23-cv-00680, 2023 WL 8261427, at *2 (D. Utah 2023). "Although good cause may be shown where a party

seeks a preliminary injunction, a pending preliminary injunction motion or hearing is not sufficient to warrant expedited discovery." *Colorado Montana Wyoming State Area Conf. of the NAACP v. United States Election Integrity Plan*, No. 22-CV-00581-PAB, 2022 WL 1443057, at *1 (D. Colo. May 6, 2022) (citations omitted). Such cases allowing discovery for preliminary injunction motions "are 'expected to be rare.'" *Id.* (quoting *Avaya, Inc. v. Acumen Telecom Corp.*, No. 10-cv-03075-CMA-BNB, 2011 WL 9293, at *3 (D. Colo. Jan. 3, 2011) (other citations omitted)).

Here, Plaintiffs have not even attempted to make a showing sufficient to justify the "rare" circumstance where the Court may order discovery before the time period permitted by Fed. R. Civ. P. 26(d)(1), particularly when such discovery was unnecessary for the Plaintiffs to file their *Motion*. Further, Plaintiffs have not demonstrated they will suffer irreparable harm or if they do not obtain the discovery they seek with their preliminary injunction motion. *See Are You Listening Yet PAC v. Henderson*, No. 2:24-CV-00104-JNP, 2024 WL 1051984, at *11 (D. Utah Mar. 11, 2024) (denying motion for expedited preliminary injunction because plaintiffs "have not demonstrated irreparable harm would follow if the court denied their motion.").

## V. <u>CONCLUSION</u>

The Court should deny Plaintiffs' *Motion* because the Plaintiffs have not demonstrated irreparable harm to Plaintiffs if an injunction is denied, which is the most important element, nor have Plaintiffs demonstrated reasonable probability of success on the merits or that the balance of equities requires an injunction. The Court should deny Plaintiffs' request for an extraordinary remedy that would disrupt the status quo for all of the reasons identified above.

DATED this 21st day of February, 2025.

**SPENCER FANE LLP**

*/s/ Troy Rackham*
Keith A. Call
Troy Rackham
*Attorneys for Messner Reeves Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025, I caused a true and correct copy of the foregoing **MESSNER REEVES, LLP'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** to be served via email to the following:

Stephen K. Christiansen
**CHRISTIANSEN LAW, PLLC**
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
steve@skclawfirm.com
*Attorneys for Plaintiffs*

Kenneth E. Chase (Admitted Pro Hac Vice)
**CHASE LAW & ASSOCIATES, P.A.**
2700 N. Military Trail, Suite 150
Boca Raton, FL 33431
kchase@chaselaw.com
*Attorneys for Plaintiffs*

Howard W. Foster (Admitted Pro Hac Vice)
**FOSTER PC**
155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
hfoster@fosterpc.com
*Attorneys for Plaintiffs*

*/s/ Stephanie Chavez*
Legal Assistant