Stephen K. Christiansen (6512)
CHRISTIANSEN LAW, PLLC
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
Telephone: 801.716.7016
steve@skclawfirm.com

Kenneth E. Chase (Admitted Pro Hac Vice)
CHASE LAW & ASSOCIATES, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: 305.402.9800
kchase@chaselaw.com

Howard W. Foster (Admitted Pro Hac Vice)
FOSTER PC
155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
Telephone: 312.726.1600
hfoster@fosterpc.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| KOSHER EATS LLC, a Florida limited liability company, EMERALD CONSULTING PARTNERS LLC, a Florida limited liability company, ABBSON LLC, a New York limited liability company, MSC COMPANIES, LLC, a Utah limited liability company, and HOMEPEOPLE CORPORATION, a New York corporation,<br>Plaintiffs,<br>v.<br>TORBEN WELCH, an individual, et al.,<br>Defendants. | **REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Case No. 2:24-cv-00520-DBB-DBP**<br><br>**Judge: David Barlow**<br><br>**Magistrate Judge: Dustin B. Pead** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

I. DEFENDANTS' PATTERN OF DECEPTION CONFIRMS THE RISK OF FURTHER DISSIPATION .................... 2

II. JIM SMITH'S STATEMENT IS IRREGULAR, INSUFFICIENT, AND EVASIVE. .................... 3

III. THE COURT HAS CLEAR AUTHORITY TO GRANT THE REQUESTED INJUNCTIVE RELIEF. .................... 6

A. *Grupo Mexicano* and *Niemi* Do Not Apply to Fiduciary and Escrow Relationships. .................... 6

B. Courts Routinely Grant Injunctive Relief Over Escrow and Trust Funds .................... 6

IV. PLAINTIFFS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS. .................... 7

A. The BELOC Agreement Confirms the ICA Funds Were Held in Escrow .................... 7

B. *Timothy v. Pia* Does Not Apply. .................... 8

V. PLAINTIFFS FACE IMMINENT AND IRREPARABLE HARM .................... 9

VI. THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR INJUNCTIVE RELIEF. .................... 9

CONCLUSION .................... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AAAG-California, LLC v. Kisana*,
439 F. Supp. 3d 1265 (D. Utah 2020)....................6

*Abreu v. Davis Cnty.*,
No. 1:21-CV-129-RJS, 2024 WL 327335 (D. Utah Jan. 29, 2024)....................4

*Bokf, N.A. v. Condon*,
No. 19-CV-01044-PAB, 2019 WL 13195203 (D. Colo. Apr. 17, 2019)....................7

*Corona v. Quad Graphics Printing Corp.*,
218 F. Supp. 3d 1068 (C.D. Cal. 2016)....................4

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001)....................9

*Fed. Deposit Ins. Corp. v. Antonio*,
649 F. Supp. 1352, 1355 (D. Colo. 1986), *aff'd*, 843 F.2d 1311 (10th Cir. 1988)....................3, 9

*Fed. Deposit Ins. Corp. v. Antonio,*
843 F.2d 1311 (10th Cir. 1988)....................3

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)....................2, 6

*In re Discipline of Lundgren*,
355 P. 3d 984 (Utah 2015)....................10

*Lyons v. Jefferson Bank & Tr.*,
781 F. Supp. 1525 (D. Colo. 1992)....................6

*Niemi v. Lasshofer*,
728 F.3d 1252 (10th Cir. 2013)....................2, 6

*Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC*,
424 P.3d 937 (Utah Ct. App. 2018), *vacated*, 456 P.3d 731 (Utah 2019)....................8

*Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC*,
456 P.3d 731 (Utah 2019)....................8

*Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*,
805 F.2d 351 (10th Cir. 1986)....................9

*United States v. Chartraw*,
No. 2:12-cr-00184 (E.D. Cal.) .......... 2

*United States v. Chartraw*,
2:24-cr-00311 (E.D. Cal.) .......... 2

**Statutes** **Page(s)**

UT R RPC Rule 3.3. .......... 4

**INTRODUCTION**

Defendants changed their story yet again, as they failed to address Plaintiffs' core arguments and did nothing to shed meaningful light on the disappearance of $8.3 million in escrowed funds. For the past year and a half, until just two weeks ago, Defendants repeatedly assured Plaintiffs and others, in writing, verbally, and through public statements, that Plaintiffs' escrow funds were intact and merely delayed due to increasingly implausible banking or administrative issues. Now for the first time, and only in response to this Motion, Defendants have reversed course, contradicted their prior statements, and asserted, without a single supporting bank statement, that the funds are purportedly gone. Without producing a single supporting document, Defendants now claim that all the escrow money has been gone for an unspecified period of time without explaining where the money was sent, its current location, why this happened, or why Defendants lied about it. Defendants even obfuscate and flip-flop regarding which one of their clients is purportedly to blame, INBE or Clearwater. These glaring and indefensible contradictions further demonstrate Defendants' misconduct.

Messner Reeves does not dispute that it directly transferred at least $753,000 from the trust account containing Plaintiffs' funds to its client, Dribble Dunk, between April 28, 2023 and July 3, 2023. In 2023, Messner was at the epicenter of Dribble Dunk's efforts to finance the Las Vegas Dribble Dunk project, having falsely represented to the Las Vegas Zoning Commission on November 16, 2022 that its client, Clearwater, possessed $5 billion in a PG Asia Bank account and on November 21, 2023 that Clearwater held $5 billion in a FIDES bank account in Mexico.[1]

[1] "My name is Torben Welch with Messner Reeves. Our firm serves as outside business council [sic] for the All Net [Dribble Dunk] project… My role is financing… That partner is Clearwater Premier Perpetual Master, LLC, and they're an equity partner in this project and they have secured financing on behalf of All Net [Dribble Dunk] and have provided $5 billion in an account, an offshore account for the purposes of building this project." ECF No. 203-6 at 83.

There is no lawful basis for Messner's client, Clearwater—which is operated by convicted felon Daniel Chartraw[2]—to have received Plaintiffs' escrow funds from Messner's trust account. Defendants refuse to account for the remaining funds in any meaningful way and fail to rebut Plaintiffs' evidence of irreparable harm, including the imminent collapse of Plaintiffs' businesses and the risk that continued dissipation of assets will render any judgment meaningless. Defendants misstate the law regarding injunctive relief, relying on *Grupo Mexicano* and *Niemi*—cases that apply to ordinary creditor-debtor relationships rather than fiduciary and escrow arrangements. Courts routinely grant injunctive relief to prevent further dissipation of escrowed or trust funds, and this case falls squarely within those parameters. Given Defendants' pattern of deception and ongoing efforts to conceal the escrowed funds, injunctive relief is necessary to prevent further fraudulent transfers and to ensure Plaintiffs have a meaningful opportunity to recover their money. For these reasons, Plaintiffs' Motion for Preliminary Injunction should be granted.

## I. DEFENDANTS' PATTERN OF DECEPTION CONFIRMS THE RISK OF FURTHER DISSIPATION.

Defendants now admit they blatantly lied for a year and a half, repeatedly assuring Plaintiffs that their $8.3 million in escrow funds remained secure and would be returned. On multiple occasions, including January 25, 2024 and February 15, 2024, Welch falsely stated that Plaintiffs' funds *remain in escrow* under Defendants' control. ECF No. 203-6 at 104, 110; 203-1 at 10, ¶ 56. As recently as February 22, 2024, Messner publicly stated, "At no time have the funds at issue in the lawsuit disappeared or become lost." ECF No. 203-6 at 114; https://messner.com/statement-regarding-emerald-consulting-partners-lawsuit/ (last visited March

[2] *United States v. Chartraw*, No. 2:12-cr-00184 (E.D. Cal.); *United States of America v. Daniel Chartraw*, No. 2:24-cr-00311 (E.D. Cal.). Defendants, through their prior counsel, attempted to conceal Chartraw's involvement by listing him under the alias "Leon Chartue" in a privilege log of withheld communications between Chartraw and Welch. ECF No. 203-6 at 156-57.

7, 2025). On March 20, 2024, Welch issued another fabricated excuse, vaguely suggesting that a "national bank partner" was handling the last step of the ICA deposits. ECF No. 203-1 at 11, ¶ 63.

Defendants do not dispute—and glaringly fail to acknowledge or explain—the fact that between April 28, 2023 and July 3, 2023, Messner transferred over $753,000 to its client, Dribble Dunk. The motive for Defendants' deception is apparent as Messner diverted Plaintiffs' escrow funds to the Dribble Dunk project, on which Messner was "outside business counsel," and Welch oversaw "financing." After receiving Plaintiffs' $8.3 million by the end of June 2023, on November 21, 2023, Welch assured the Las Vegas Zoning Commission that "all current construction invoices [were] in the process of being paid" and that Clearwater had "secured financing" with $5 billion in an offshore account. These false statements in November 2023 about the nonexistent $5 billion match Messner's similar misrepresentations in November 2022 regarding supposed funding from PG Asia Bank. Defendants' pattern of deception, particularly regarding Clearwater and Dribble Dunk, confirms the risk of further dissipation of assets. Rather than safeguarding Plaintiffs' escrowed funds, Defendants used them for an unrelated venture while repeatedly misleading Plaintiffs and others. Defendants' continued obfuscation further justifies injunctive relief. *See Fed. Deposit Ins. Corp. v. Antonio*, 649 F. Supp. 1352, 1355 (D. Colo. 1986), *aff'd,* 843 F.2d 1311 (10th Cir. 1988).

## II. JIM SMITH'S STATEMENT IS IRREGULAR, INSUFFICIENT, AND EVASIVE.

Defendants refused to produce a single bank record verifying any transfer as they continue to conceal key details such as transaction dates, amounts, recipient banks, and account names. Instead, their opposition relies entirely on the so-called "Affidavit of Jim Smith"—a document submitted by a non-attorney that is neither sworn *under penalty of perjury* nor attested to be *true and correct.* Smith's statement is neither a valid affidavit nor a valid unsworn declaration under 28

U.S.C. § 1746. *See Abreu v. Davis Cnty., No. 1:21-CV-129-RJS, 2024 WL 327335, at *3 (D. Utah Jan. 29, 2024)*; *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1071 (C.D. Cal. 2016). Not only is Smith's statement unsworn, but his selection as the sole speaker is highly suspect. Smith is not an attorney, and he provides no basis for personal knowledge of the transactions. He appears to have been chosen to shield the Defendant attorneys—including Torben Welch—from making statements under oath, thereby avoiding their duty of candor while ensuring they remain unaccountable for prior misrepresentations. *See* UT R RPC Rule 3.3 cmt.[7].

Smith's document reads like a narrative statement rather than an affidavit, and it lacks proper proofing, as evidenced by its numerical inconsistencies, mathematical and grammatical errors, and apparent misstatements of amounts. These errors suggest either a deliberate effort to obfuscate or extreme carelessness on a matter of critical importance. Notably, Smith asserts that INBE authorized Messner Reeves to disburse funds on "4 separate occasions totaling $2,490,33 [sic]." Out of a missing $8.3 million, he appears to reference less than $2,500 in disbursements (0.03%). While this could be a decimal error, it is unlikely given that Smith correctly states elsewhere that the total amount received in the COLTAF account was $10,070,000.00. That such an error went unnoticed by Smith, 78 attorney Defendants, their firms, and their counsel is difficult to believe.

Even if taken at face value, Smith's statement accounts for only 0.03% of the missing funds. He references four authorizations but omits key details, including when they occurred, whether the disbursement amounts were consistent, and whether the funds went to the same recipient. He also ignores the $753,000 in wires to Dribble Dunk and omits any reference to Titan Financial. If Defendants intended to assure the Court of their trustworthiness in handling funds, they have accomplished the opposite.

Smith's statement also inconsistently shifts blame. In their October 2024 filings, Defendants attempted to blame only INBE and not Clearwater. *See* ECF No. 171 at 1, 6; ECF No. 177 at 3. Yet Smith ambiguously asserts—without evidence—that "INBE also authorized Clearwater to direct Messner Reeves" to disburse funds, and that Messner purportedly complied with "INBE's request or Clearwater's request." Which is it?[3] This contradiction is unacceptable, particularly when no ICA escrow funds should have been withdrawn before loan funding, which never occurred. The BELOC expressly precludes any disbursement authorization from INBE, Clearwater, or anyone other than Plaintiffs. Defendants never disputed that the ICA deposits belonged to Plaintiffs—until two weeks ago.

A forthcoming party would have attached records to substantiate such drastic shifts in representation. Smith omits any justification for why INBE, Clearwater, or Messner removed escrow funds when no loans were disbursed. The loans themselves were a sham—no legitimate lender would issue a 10-year, 6% interest-only loan without a personal guarantee, real estate collateral, or underwriting. INBE admitted it was not able to issue the funding, directly contradicting Welch's false statements about INBE's ability to perform. *Compare* ECF No. 203-6 at 180, Interrogatory Answer 15 *with* ECF No. 203-6 at 69. Smith makes no effort to reconcile Messner's previous misrepresentations or acknowledge the stark contrast between his claims and Messner's past assertions.[4] Smith's deficient, contradictory, and unsupported statement does

[3] This latest shift in Defendants' story—suggesting that Clearwater, rather than INBE, could be to blame—may stem from INBE's categorical denial, under oath, that it has any knowledge of where Messner sent Plaintiffs' money. INBE explicitly stated: "INBE is without knowledge of any transfers, dates, bank accounts, or entities which received Plaintiffs' ICA deposits." *See* ECF No. 203-6 at 177, Interrogatory Answers 3-8, 21.

[4] Moreover, Smith's assertion that no other Messner Reeves attorneys had knowledge of deposits or disbursements is dubious—if not outright false—given that multiple Messner attorneys, beyond Welch, were openly copied on correspondence as early as October 2023. *See* ECF No. 203-6 at

nothing to rebut Plaintiffs' allegations. Instead, it further underscores Defendants' continued pattern of evasion and deception, reinforcing the need for injunctive relief.

## III. THE COURT HAS CLEAR AUTHORITY TO GRANT THE REQUESTED INJUNCTIVE RELIEF.

### A. *Grupo Mexicano* and *Niemi* Do Not Apply to Fiduciary and Escrow Relationships.

Defendants misinterpret *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) and *Niemi v. Lasshofer*, 728 F.3d 1252 (10th Cir. 2013). These cases address situations where plaintiffs sought to freeze a defendant's general assets before obtaining a money judgment. Plaintiffs here seek something different: the return of specific, identifiable escrow funds that Defendants were contractually, statutorily, and fiduciarily obligated to safeguard and return.[5] Given the fiduciary nature of the relationship and the wrongful dissipation of escrowed funds, injunctive relief is both justified and necessary.

### B. Courts Routinely Grant Injunctive Relief Over Escrow and Trust Funds.

Federal courts consistently issue preliminary injunctions to preserve escrowed or trust funds wrongfully transferred. In *AAAG-California, LLC v. Kisana*, 439 F. Supp. 3d 1265, 1274-81 (D. Utah 2020) the court enjoined the dissipation of specific assets where the plaintiff had a clear property interest in traceable funds. Similarly, in *Lyons v. Jefferson Bank & Tr.*, 781 F. Supp. 1525, 1531 (D. Colo. 1992) the court ordered escrow funds to be held in a neutral account to prevent

---

77-78, 105-06. It is implausible that no other attorney at the firm, including the Defendants in this case, reviewed the firm's COLTAF trust account ledger over the past 18 months.

[5] *Grupo Mexicano* explicitly distinguished cases where a plaintiff asserts equitable claims to specific, identifiable assets wrongfully taken. This case falls squarely within that exception. Plaintiffs have a direct legal and equitable interest in specific escrowed funds that were required—under the BELOC agreement—to remain in Messner Reeves' sole possession and control. The agreement further required the return of those funds if loan funding did not occur. Plaintiffs' claims—including conversion, breach of fiduciary duty, and violations under RICO—seek equitable relief, including injunctive measures, making *Grupo Mexicano* inapplicable.

further depletion. Courts have broad equitable authority to prevent irreparable harm, particularly in cases involving fiduciary breaches and misappropriated trust funds. In *Bokf, N.A. v. Condon*, No. 19-CV-01044-PAB, 2019 WL 13195203, at *4 (D. Colo. Apr. 17, 2019) the court emphasized that "the public interest supports the enforcement of fiduciary duties, such as the duty of loyalty." Injunctive relief is warranted here due to the fiduciary relationship and the risk of further dissipation. Moreover, Defendants' deception and failure to account for the missing escrowed funds warrant an injunction to prevent further fraud and to protect Plaintiffs' ability to recover.

## IV. PLAINTIFFS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. The BELOC Agreement Confirms the ICA Funds Were Held in Escrow.

Two weeks ago, Defendants abruptly abandoned the dilatory lies they had been telling for the past year and a half, now asserting for the first time that Plaintiffs' ICA deposits were never escrowed funds in the first place. This assertion is frivolous. First, it directly contradicts Defendants' own prior statements. *See, e.g.*, Jan. 25, 2024, Torben Welch, ECF No. 203-6 at 104, 110 ("In the meantime, the funds remain part of the escrow under our control at Titan Financial"). Second, the plain language of the BELOC contradicts Defendants' newfound assertion. Recital E states that the ICA payment was intended for interest payments, confirming its restricted purpose. Section 3.6 makes clear that ICA funds remain refundable unless a loan advance occurs—something that never happened. Exhibit F explicitly establishes a *"90-day escrow term"* and requires that the funds be returned if no loan is funded. Exhibit F references *"escrow"* three times, refers to the ICA funds as a "Deposit," and unambiguously states that prior to loan funding, the ICA funds *"shall be in Trustee's [Messner's] sole possession and control."* ECF No. 171-3 at 57.

Defendants misrepresent Section 3.6 by selectively citing language suggesting that ICA funds could be freely used. The provision states that funds may *only* be used for interest payments

on funded loans. Since no loan was funded, Defendants had no authority to use the ICA deposits for any purpose. Similarly, Defendants' reliance on Section 7.4 is misplaced, as that provision permits ICA funds to be used only for interest payments on advances. Since no advances were made, the funds had to remain untouched.

Section 13.7(a) governs situations where no loan advance occurs—precisely the case here—and it entitles Plaintiffs to a full refund upon submitting a termination letter. Plaintiffs followed this process, yet Defendants failed to return the funds. Defendants also misrepresent Section 14.11, which states only that *"No third Person shall have any rights hereunder."* Defendants incorrectly argue that this provision shields third parties from obligations under the BELOC, despite the fact that the term *obligation* does not appear anywhere in the BELOC and is contradicted by Exhibit F. These provisions do nothing to shield Messner, Clearwater, or Dribble Dunk from liability for wrongful transfers. If, as Defendants now claim, the ICA funds were never escrowed, then Messner, Clearwater, and Dribble Dunk had *no rights to them at all*—proving that their transfers were entirely unauthorized.

**B. *Timothy v. Pia* Does Not Apply.**

Unlike the law firm in *Timothy*, which merely *passively* held funds for a debtor, Messner Reeves actively drafted the BELOC, designated itself as escrow agent, controlled the funds, and then transferred them without authorization. *See Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC,* 424 P.3d 937 (Utah Ct. App. 2018)*, vacated,* 456 P.3d 731 (Utah 2019). Moreover, *Timothy* involved a firm with no contractual obligations to third parties. Here, Messner Reeves was explicitly designated as the escrow agent, and the escrow instructions required that the deposit funds during the 90-day escrow term "shall be in Trustee's [Messner's] sole possession and control." This created direct fiduciary duties to Plaintiffs, making *Timothy* entirely inapplicable.

## V. PLAINTIFFS FACE IMMINENT AND IRREPARABLE HARM.

Defendants fail to rebut Plaintiffs' evidence of irreparable harm, relying solely on the legally deficient argument that Plaintiffs' injuries are purely economic. The record clearly establishes that Plaintiffs' businesses are on the verge of collapse due to the dissipation of their escrowed funds. Plaintiffs submitted sworn declarations detailing their reliance on these funds as essential operating capital, and Defendants do not dispute these facts.[6] Defendants offer no explanation for transferring at least $753,000 to Dribble Dunk, nor do they provide any evidence regarding the current status of the escrow funds. Plaintiffs have demonstrated that Defendants' misappropriation of their escrow deposits has prevented them from meeting payroll, fulfilling contracts, paying suppliers, and performing essential operations, thereby causing permanent reputational damage and an imminent risk of total business failure. Because monetary damages cannot fully address these harms, injunctive relief is warranted.

## VI. THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVOR INJUNCTIVE RELIEF.

Defendants have not shown that the requested injunctive relief would impose any legitimate hardship. Their conclusory assertion that the "balance of hardships is fairly even" is unsupported and ignores that the relief sought merely requires them to comply with their existing obligations under the BELOC agreement and the law. Since Defendants now claim the money is entirely gone, an injunction preventing further transfers would impose no burden on them.

---

[6] The Tenth Circuit has long recognized that imminent business failure, reputational damage, and the inability to meet contractual obligations constitute irreparable harm. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156-57 (10th Cir. 2001). Courts routinely grant injunctive relief when defendants attempt to conceal or dissipate assets necessary to satisfy a judgment. *See Antonio*, 649 F. Supp. at 1355.

Likewise, producing bank records to account for the missing escrowed funds is neither onerous nor unreasonable given the increasing magnitude of damages.

Plaintiffs, by contrast, face imminent business collapse, reputational damage, and the loss of $8.3 million in escrowed funds. Defendants would suffer no cognizable harm from an order preventing them from dissipating money they had no right to transfer and requiring them to provide an accounting. Despite their shifting arguments, Messner has never asserted any right to Plaintiffs' escrow funds and continues to hide behind its clients while failing to take any action to recover the funds. Messner has shown no interest in reclaiming the stolen escrow funds—perhaps because chasing the money would mean catching the culprit in the mirror.

The public interest overwhelmingly favors preventing attorney misconduct and protecting client escrow funds. Misuse of client escrow funds is a grave ethical violation that erodes public confidence in the legal profession.[7] Given Defendants' pattern of deception and evasion, injunctive relief is not only appropriate but necessary to prevent further misconduct and ensure accountability.

## CONCLUSION

The Court should issue a preliminary injunction barring Messner from further transferring Plaintiffs' escrowed funds, requiring any remaining escrowed funds to be deposited into the Court registry, and directing Messner to disclose prior transfers and the current location of the funds.

---

[7] Attorneys who misappropriate escrowed funds have faced severe sanctions, including disbarment and criminal prosecution. *See In re Discipline of Lundgren*, 355 P. 3d 984, 988 (Utah 2015) (holding that "intentional misappropriation of client funds is so deeply concerning and intolerable to our profession, an attorney who is guilty of it should be disbarred.") All five Plaintiffs attested that Messner's role as escrow agent for their ICA deposits was a critical factor in their decision to move forward with the transaction. *See* ECF No. 203-1 at 3, ¶ 9; ECF No. 203-2 at 3, ¶ 9; ECF No. 203-3 at 4, ¶ 13; ECF No. 203-4 at 3, ¶¶ 12-13; ECF No. 203-5 at 3, ¶¶ 10-11, 14-15. Defendants' attempt to shield critical financial information behind attorney-client privilege is meritless, as privilege does not apply to basic financial transaction details in the escrow context. Further, the crime-fraud exception bars privilege where communications further unlawful acts.

Per the Court's Individual Practices § 2(A), Plaintiffs have no objection to a hearing if the Court determines that one is needed.

A proposed order was submitted at ECF No. 203-7.

Respectfully submitted,

CHRISTIANSEN LAW, PLLC

*/s/ Stephen K. Christiansen*
Stephen K. Christiansen

CHASE LAW & ASSOCIATES, P.A.

*/s/ Kenneth E. Chase*
Kenneth E. Chase

FOSTER PC

*/s/ Howard W. Foster*
Howard W. Foster

*Attorneys for Plaintiffs*

**LOCAL RULE DUCIVR 7-1(A)(4) CERTIFICATE**

According to the word processing program used to prepare Plaintiffs' Motion for Preliminary Injunction, the total number of words in the document, inclusive of headings, footnotes, and quotations, and exclusive of the case style, signature block, and any certificate of service is 3,329. Thus, pursuant to DUCivR 7-1(a)(4), I, Kenneth E. Chase, certify that this Reply contains 3,329 words and complies with DUCivR 7-1(a)(4).

By: *[/s/ Kenneth E. Chase]*
Kenneth E. Chase

**CERTIFICATE OF SERVICE**

I, Kenneth E. Chase, hereby certify that I served the foregoing via the CM/ECF system on March 7, 2025, which automatically sends notice of an electronic filing to all counsel and registered users of record.

By: *[/s/ Kenneth E. Chase]*
Kenneth E. Chase