THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KOSHER EATS LLC, a Florida limited liability company, EMERALD CONSULTING PARTNERS LLC, a Florida limited liability company, ABBSON LLC, a New York limited liability company, MSC COMPANIES, LLC, a Utah limited liability company, and HOMEPEOPLE CORPORATION, a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TORBEN WELCH, an individual, et al.,<br><br>Defendants. | **ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS AND FOR RULE 11 SANCTIONS**<br><br>Case No. 2:24-cv-00520-DBB-DBP<br><br>Judge David Barlow<br><br>Magistrate Judge Dustin B. Pead |

Before the court are four motions to dismiss Plaintiffs' First Amended Complaint[1] filed by (i) the 76 current and former Messner Employees (the "Messner Individuals");[2] (ii) the "Messner General Partnership," allegedly made up of the Messner Individuals;[3] (iii) Torben Welch;[4] and (iii) Messner Reeves, LLP ("Messner Reeves"), including ten of its equity partners

---

[1] First Am. Compl. ("FAC"), ECF No. 159, filed September 18, 2024.
[2] Messner Individuals' and Former Messner Individuals' Mot. to Dismiss ("Messner Individuals' Mot. to Dismiss"), ECF No. 170, filed October 9, 2024. The *current* Messner Individuals are Darren Alberti, Brenda Bartels, Alex Beltz, Amber Blasingame, Brett Boon, Valerie Bromley, Edgar Carranza, Kathleen Carter, Cyntia Carucci, Gregory Cohen, Kimberly Cronin, Isaac Crum, Erica Deatherage, Matthew Deenihan, Allison Dodd, Brieanna Dolmage, Patrick Drake, R.J. Ertmer, Rachel Farr, Mary Byrne Fletcher, Austin Gemmell, Matthew George, Margaret Gray, Scott Hawranek, Andrew Hollins, Amy Huff, Craig Humphrey, Maclain Joyce, Idin Kashefipour, Dara Keller, Daniel Klett, Steven Knauss, Jason Martinez, Ian Mitchell, Scott Monroe, Simone Montoya, Kathleen Mowry, Christina Mundy, Ann Nguyen, Jonathan Owens, Julian Pardo de Zela, Frank Perretta, William Randall, Adam Royval, Edwin Schwartz, Mikhail Shah, Gregory Sitrick, Rowan Smith, Aaron Soleimani, Heather Stern, Deanne Stodden, Benjamin Tietgen, Jenny Thornton, Wade Warthen, Andrew Welch, and Karie Wilson. The *former* Messner Individuals are Kate Bailey, Charles Cavanagh, Laura Chartrand, Deanna Gilbertson, Matthew Jedrzejek, Marjorie Kratsas, Katherine Otto, Peter Pierce, Richard Reice, Heather Salg and John Stevens.
[3] Messner General Partnership's Mot. to Dismiss, ECF No. 177, filed October 15, 2024.
[4] Welch Mot. to Dismiss, ECF No. 182, filed on October 23, 2024.

(the "Messner Partners");[5] and Mr. Jake Brigham.[6] Additionally, all Defendants other than Mr. Welch and Messner Reeves filed a motion for Rule 11 sanctions.[7] For the reasons that follow, the court grants the Messner Individuals' motion to dismiss;[8] grants the Messner General Partnership's motion to dismiss;[9] grants in part Messner Reeves, LLP's, the Messner Partners', and Mr. Brigham's motion to dismiss;[10] grants in part Mr. Welch's motion to dismiss; and grants the motion for Rule 11 sanctions.[11]

## BACKGROUND[12]

Plaintiffs are five companies that entered into a Business Equity Line of Credit agreement ("BELOC")[13] with INBE Capital Group, LLC ("INBE"), a non-party.[14] Mr. Welch, one of 11 of Messner Reeves' equity partners being sued, represented INBE and assisted in drafting the BELOC.[15] The so-called Messner General Partnership, according to Plaintiffs, consists of Mr. Welch and 76 current and former partners at Messner Reeves, each of whom are named individually as Defendants.[16] Jake Brigham is an associate attorney working under Mr. Welch.

---

[5] The Messner Partners consist of Renee Finch, Michelle Harden, Bryant Messner, Caleb Meyer, Bruce Montoya, David Reeves, John Shunk, Matthew Sullivan, Douglas Wolanske, and Jon Zimmerman.
[6] Messner Partners' Mot. to Dismiss, ECF No. 171, filed October 9, 2024.
[7] Defendants' Mot. for Rule 11 Sanctions, ECF No. 179, filed October 15, 2024.
[8] ECF No. 170.
[9] ECF No. 177.
[10] ECF No. 171.
[11] ECF No. 179.
[12] At the motion to dismiss stage, the court accepts the First Amended Complaint's factual allegations as true and views those facts in the light most favorable to the nonmoving party. *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006).
[13] Plaintiffs request that the court disregard all extrinsic materials submitted by Defendants, citing the correct legal standard, but failing to apply it to any of Defendants' attached exhibits. The court can, and does, consider the BELOC because it is referenced throughout the First Amended Complaint, is central to Plaintiffs' claims, and its authenticity is not disputed. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); FAC ¶¶ 27–43. The court also considers Messner Reeves' certificate of good standing by the Colorado Secretary of State because it is a publicly accessible record. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) ("A district court . . . may 'take judicial notice of its own files and records, as well as facts which are a matter of public record,' without converting a motion to dismiss into a motion for summary judgment."). The same is not true for the remaining exhibits, and the court does not consider them.
[14] FAC ¶¶ 20, 27–30.
[15] *Id.* ¶¶ 26, 28.
[16] *Id.* ¶¶ 16, 84–92.

The FAC only specifically alleges that Mr. Welch and Mr. Brigham had any particular knowledge or involvement related to Plaintiffs' cause of action, in addition to Messner Reeves as an entity, which acted as INBE's Trustee.

Under the BELOC, Plaintiffs agreed to invest money with INBE to secure business lines of credit.[17] Plaintiffs wired $8,670,000 as a deposit of 25% of the loan amount (the "ICA deposit") to INBE's Trustee, Messner Reeves.[18] The BELOC stated that the ICA deposit would be "initially wired to INBE Capital LLC or one of its nominated administrative agents for aggregation before being forwarded & held by a nominated Trustee (Attorney) for the purpose of arranging for the issuance of a Loan (Line of Credit)."[19]

The BELOC stated that the first tranche of funding would be issued within 90 days; yet, to date, INBE has not provided any payments to Plaintiffs, nor returned the ICA deposit.[20] Mr. Welch and his representatives are alleged to have repeatedly made false assertions that the loans would be funded imminently.[21] Although the ICA deposit was to remain "in [Messner Reeves'] sole possession and control," Mr. Welch transferred the money from the Messner Reeves Northern Trust COLTAF account in Colorado to an account in Wyoming.[22]

The BELOC provides a contractual guarantee that INBE will reimburse the Borrower (Plaintiffs) the amount of their ICA deposit in the event that INBE cannot provide the required funding.[23] This agreement is:

> contractual in nature, and is not collateralized in any manner with any funds other than the [ICA deposit], which shall be in [Messner Reeves'] sole possession and control. [INBE] agrees none of the Indemnities shall be liable in any manner should [Messner Reeves] fail to return the [ICA deposit] per his contractual

---

[17] *Id.* ¶¶ 20, 27–30.
[18] *Id.* ¶¶ 30, 32.
[19] BELOC, Exhibit F: Wire & Joint Instructions, ECF No. 173-2, filed October 23, 2024.
[20] FAC ¶¶ 30, 53, 59.
[21] *Id.* ¶ 67.
[22] *Id.* ¶¶ 32, 33.
[23] BELOC, Exhibit F: Wire & Joint Instructions.

obligations with [INBE], although [INBE] does agree to use its best efforts, including legal efforts, to recover the [ICA deposit] should [Messner Reeves] fail to return it per his contractual agreement with [INBE]. For the avoidance of doubt, in the event we're unsuccessful at recovering [the ICA deposit] from [Messner Reeves], INBE will step in and reimburse the Borrower the full amount of [the ICA deposit] within 90 days.[24]

On July 25, 2024, Plaintiffs initiated the present action against Defendants.[25] On September 18, 2024, Plaintiffs filed an Amended Complaint asserting the following causes of action: (I) violation of the Racketeer Influenced & Corrupt Organizations Act ("RICO") by Mr. Welch, the Messner Partners, and the Messner Individuals;[26] (II) Conspiracy to violate RICO by Mr. Welch and Mr. Brigham;[27] (III) Conversion by Messner Reeves;[28] (IV) Conversion by Mr. Welch, the Messner Partners, the Messner Individuals, and the Messner General Partnership;[29] (V) Negligence by Messner Reeves;[30] (VI) Negligence by Mr. Welch, the Messner Partners, the Messner Individuals, and the Messner General Partnership;[31] (VII) Breach of Fiduciary Duty by Messner Reeves;[32] and (VIII) Breach of Fiduciary Duty by Mr. Welch, the Messner Partners, the Messner Individuals, and the Messner General Partnership.[33] All Defendants moved to dismiss. The Messner Individuals also moved for Rule 11 sanctions. On November 27, 2024, Plaintiffs filed a joint Opposition to Defendants' motions to dismiss.[34] On November 28, 2024, Plaintiffs filed an Opposition to the Messner Individuals' motion for sanctions, which included a cross-

---

[24] *Id.*
[25] Compl., ECF No. 1.
[26] FAC ¶¶ 99–110.
[27] FAC ¶¶ 111–120.
[28] FAC ¶¶ 121–129.
[29] FAC ¶¶ 130–145.
[30] FAC ¶¶ 146–161.
[31] FAC ¶¶ 162–177.
[32] FAC ¶¶ 178–191.
[33] FAC ¶¶ 192–214.
[34] Pls.' Opp'n to Defs.' Mots. to Dismiss, ECF No. 194.

request for sanctions.[35] Defendants filed a Reply to Plaintiffs' two briefs on December 23, 2024.[36]

## LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[37] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[38] But the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[39]

## DISCUSSION

The parties agree that Colorado law applies. Before addressing the substantive causes of action against Defendants, the court first resolves whether Plaintiffs have sufficiently alleged the existence of the Messner General Partnership, and thus whether the individuals who Plaintiffs do not allege had any personal knowledge or participation in the substantive facts are proper parties.

### I. THE "MESSNER GENERAL PARTNERSHIP"

A general partnership is created when two or more persons associate together "to carry on as co-owners [of the] business for profit . . . whether or not the persons intend to form a partnership."[40] Although a written partnership agreement can be evidence of a general

---

[35] Pls.' Opp'n to Defs.' Mot. for Sanctions and Cross-Request for Sanctions ("Pls.' Opp'n to Sanctions"), ECF No. 195.
[36] Defs.' Reply in Support of Mots.' to Dismiss, ECF No. 199; Welch's Reply in Support of Mot. to Dismiss, ECF No. 201; Defs.' Reply in Support of Sanctions, ECF No. 200.
[37] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[38] *GFF Corp.*, 130 F.3d at 1384 (10th Cir. 1997).
[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[40] C.R.S. § 7-64-202(1).

5

partnership, it is not required; instead, a general partnership may be formed by the conduct of the parties.[41]

Plaintiffs allege that the 76 Messner Individuals and Mr. Welch, through words and conduct, formed an unincorporated general partnership to operate Messner Reeves.[42] In support, they allege that the Messner Individuals "presented themselves to the public, to Plaintiffs, and to clients as 'partners' of a law firm."[43] Additionally, the Messner Individuals

> contribut[ed] to the law firm's operation and management, . . . shared office space, operated within organized practice groups, pooled resources for administrative support, collectively used electronic file systems, . . . divided responsibilities among themselves for marketing, client matters, case management, and carrying on the functions of a law firm, . . . contributed a portion of the revenue received to a central account to cover shared expenses, including rent, insurance, utilities, and other fixed costs, . . . jointly decided on new and existing client engagements, work allocation, and revenue and profit division, . . . [and] met regularly to discuss the Messner General Partnership's business strategy, engagements, cases, management, administration, billing, and financial matters.[44]

As a result, Plaintiffs allege that, despite "no formal written partnership agreement, the General Partnership Defendants' repeated use of the term 'partner' and their conduct, including shared decision-making, revenue-sharing, and public representations, established the formation, operation, and management of the unincorporated Messner General Partnership, which operated concurrently and distinctly alongside Messner Reeves."[45]

The Messner Individuals respond that the term "partner" as a title at a law firm is not synonymous with a "partner" under partnership law.[46] Additionally, acts such as sharing "office space," practicing law in "practice groups," sharing or pooling "resources for administrative

---

[41] *See Duran v. Montoya*, No. 22CA2186, 2024 WL 3764178, at *3 (Colo. App. June 27, 2024); *Yoder v. Hooper*, 695 P.2d 1182, 1187 (Colo. App. 1984), *aff'd*, 737 P.2d 852 (Colo. 1987).
[42] FAC ¶¶ 83–92.
[43] *Id.* ¶ 87.
[44] *Id.* ¶¶ 88–91.
[45] *Id.* ¶ 92.
[46] Messner Individuals' Mot. to Dismiss 8–9.

support," "collectively us[ing] electronic file systems," and having "divided responsibilities" all amounts to innocent conduct applicable to all attorneys employed by a law firm.[47] The court agrees.

Under Colorado law, use of the term "partner" as a job title is not legally sufficient to prove or otherwise form a general partnership.[48] Plaintiffs attempt to dispute this principle by relying on *Levy v. Levitt*,[49] an unpublished Tenth Circuit case which precluded an individual from denying partnership status after holding himself out as a partner. The case is inapposite. In *Levy*, it was undisputed that the partner in question was previously a legal partner at a particular partnership. The defendant conceded as much and even claimed partnership losses on his tax returns.[50] The question in *Levy* was regarding the date the partnership was dissolved. And the court concluded that by holding himself out as a partner on tax returns, he could not "acquire the benefits of partnership without simultaneously assuming its corresponding liabilities."[51] The defendant also signed a "Consent and Ratification" regarding the sale of a building in which he declared he was a partner of a particular firm after the date he claimed the partnership was dissolved.[52]

Unlike in *Levy*, it is not conceded, nor are there plausible allegations showing, that the partnership in question (the "Messner General Partnership") ever existed or that the individual

---

[47] *Id.* at 2, 6.
[48] *See Catalyst Strategic Advisors, LLC v. DV Consulting, Inc.*, No. 23-CV-00396-RM-MDB, 2024 WL 2273406, at *3 n.1 (D. Colo. Apr. 24, 2024) ("Defendants' allegations that the parties referred to one another as 'partners' carry little weight in a case such as this . . . as courts have recognized that such labels are without legal significance."). The Supreme Court has similarly stated in deciding whether individuals were employees or employers, "[t]he mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor." *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 450 (2003).
[49] 3 F. App'x 944, 949 (10th Cir. 2001).
[50] *Id.* at 948.
[51] *Id.* at 949.
[52] *Id.* at 948.

support," "collectively us[ing] electronic file systems," and having "divided responsibilities" all amounts to innocent conduct applicable to all attorneys employed by a law firm.[47] The court agrees.

Under Colorado law, use of the term "partner" as a job title is not legally sufficient to prove or otherwise form a general partnership.[48] Plaintiffs attempt to dispute this principle by relying on *Levy v. Levitt*,[49] an unpublished Tenth Circuit case which precluded an individual from denying partnership status after holding himself out as a partner. The case is inapposite. In *Levy*, it was undisputed that the partner in question was previously a legal partner at a particular partnership. The defendant conceded as much and even claimed partnership losses on his tax returns.[50] The question in *Levy* was regarding the date the partnership was dissolved. And the court concluded that by holding himself out as a partner on tax returns, he could not "acquire the benefits of partnership without simultaneously assuming its corresponding liabilities."[51] The defendant also signed a "Consent and Ratification" regarding the sale of a building in which he declared he was a partner of a particular firm after the date he claimed the partnership was dissolved.[52]

Unlike in *Levy*, it is not conceded, nor are there plausible allegations showing, that the partnership in question (the "Messner General Partnership") ever existed or that the individual

---

[47] *Id.* at 2, 6.
[48] *See Catalyst Strategic Advisors, LLC v. DV Consulting, Inc.*, No. 23-CV-00396-RM-MDB, 2024 WL 2273406, at *3 n.1 (D. Colo. Apr. 24, 2024) ("Defendants' allegations that the parties referred to one another as 'partners' carry little weight in a case such as this . . . as courts have recognized that such labels are without legal significance."). The Supreme Court has similarly stated in deciding whether individuals were employees or employers, "[t]he mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor." *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 450 (2003).
[49] 3 F. App'x 944, 949 (10th Cir. 2001).
[50] *Id.* at 948.
[51] *Id.* at 949.
[52] *Id.* at 948.

was, at least at some point, a bona fide partner of the partnership. Further, the individuals here held the title of partner at a distinct firm (Messner Reeves, LLP as opposed to the "Messner General Partnership"), and they filed no legal documents demonstrating that they were partners in the legal sense in contrast to a mere job title.

Moreover, creation of a general partnership requires the individuals be co-owners of the business for profit.[53] "A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment" of a salary or other compensation to an employee.[54] Plaintiffs do not allege that any of the Messner Individuals participated in profit-sharing or contributed capital and owned shares in the partnership.[55] Plaintiffs also provide no plausible allegations that the Messner Individuals acted as co-owners; any related allegations simply describe actions common to attorneys at a law firm.[56] Instead, the FAC expressly alleges that Messner Reeves employed the Messner Individuals.[57] As the Tenth Circuit has noted, employees of a law firm are generally not partners.[58]

The Central District of Illinois encountered a similar issue in *Passavant Memorial Area Hospital Association v. Lancaster Pollard & Co.*[59] In *Passavant*, the court considered whether two "contract partners" were legally partners of a law firm, Peck, Shaffer. In concluding they

---

[53] C.R.S. § 7-64-202(1) ("[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.").
[54] C.R.S. § 7-64-202(3)(c).
[55] Paragraph 86 of the FAC alleges that "[T]he Messner General Partnership is an association of 77 individuals carrying on a joint venture law practice as co-owners for profit," but this is a legal conclusion.
[56] *See* FAC ¶¶ 89–92.
[57] FAC ¶¶ 127, 143, 175, 189, 212.
[58] *See Wheeler v. Hurdman*, 825 F.2d 257, 267–269 (10th Cir. 1987) (describing the characteristics of a partner, distinguished from an employee, as having the right to share in profits and participate in management, shared ownership, and some shared liability) (citations omitted).
[59] No. 11-CV-3116, 2012 WL 1119402 (C.D. Ill. Apr. 3, 2012).

8

were not, the court first discussed the common traits of partners to act as co-owners, participate in management, and share in the profits and losses of a law firm.[60] The court further stated:

> Peck, Shaffer's contract partners do not share the attributes of a general or limited partner. They are not owners of Peck, Shaffer. They have no investment at risk. They do not share in the profits or losses. They do not participate in management of the partnership. Their compensation is determined by contract. They are employees or independent contractors with a title. They are not partners.

The Seventh Circuit employed a similar analysis in *E.E.O.C. v. Sidley Austin Brown & Wood*,[61] citing the Sixth Circuit's assertion that "because these [law firm employees with the title of partner] actually had no bona fide ownership interest, no fiduciary relationship, no share in the profits and losses, no significant management control, no meaningful voting rights, no meaningful vote in firm decisions, and no job security, they were not bona fide partners."[62] In a concurring opinion, Judge Easterbrook reiterated that a party's label of "partner" does not control.[63] Judge Easterbrook also cited to *Davis v. Loftus*[64] in stating that "a partner who shares in the profits or loss is personally liable for the law firm's debts, while an 'income partner' who receives a salary plus a bonus is an employee and not liable for the firm's debts."[65]

In this case, Plaintiffs provide no plausible allegations for the court to conclude that the Messner Individuals are anything more than income partners, a title that has become increasingly common in law firms.[66] As such, the court concludes that Plaintiffs have not plausibly alleged

---

[60] *Id.* at *6–7.
[61] 315 F.3d 696 (7th Cir. 2002) (citing *Simpson v. Ernst & Young*, 100 F.3d 436, 442 (6th Cir. 1996)).
[62] *Id.* at 704.
[63] *Id.* at 709.
[64] 334 Ill. App. 3d 761, 778 (Ill. App. 1st Dist. 2002).
[65] *Id.*
[66] *See* Jenna Greene, *What's behind the rise in law firm non-equity partnerships?*, Reuters (Oct. 18, 2024 5:17 AM MDT), https://www.reuters.com/legal/legalindustry/column-whats-behind-rise-law-firm-non-equity-partnerships-2024-10-18/ (By my count, about 86% of the 100 largest firms by revenue have non-equity partner positions.");

the existence of the "Messner General Partnership." Therefore, Defendants' motion to dismiss the Messner General Partnership[67] is granted.

Further, there are no allegations that any of the Messner Individuals had any knowledge of or participation in the substantive facts. And, as employees of a limited liability partnership, as opposed to co-owners of a general partnership, they cannot be vicariously liable for any alleged violations by Mr. Welch.[68] Therefore, the Messner Individuals' motion to dismiss is granted.[69] The same is true regarding the Messner Partners (equity partners at Messner Reeves other than Mr. Welch). There are no allegations that any partner aside from Mr. Welch had any knowledge of or participation in the substantive facts. As partners in a limited liability partnership, they are not liable for alleged violations committed by Mr. Welch.[70] Therefore, Plaintiffs' claims against the Messner Partners are dismissed.

## II.   RICO ALLEGATIONS (COUNTS I AND II)

Plaintiffs allege RICO violations and a conspiracy to violate RICO under 18 U.S.C. §§ 1962(c) and 1962(d). To establish a valid RICO claim, Plaintiffs must plausibly allege that an individual: (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering

---

[67] Messner General Partnership's Mot. to Dismiss, ECF No. 177.
[68] Although the doctrine of *respondeat superior* imposes vicarious liability upon the employer for acts of the employee, there is no legal doctrine that imposes liability upon an employee for the acts of another employee or partner over whom his fellow employee had no supervision or control. *Settle v. Basinger*, 411 P.3d 717, 724 (Colo.App.2013) (explaining the basis for vicarious liability is the employer's or principal's power and right to control the employee's or agent's actions) (citations omitted). There are no allegations that the Messner Individuals had authority to control Mr. Welch's actions.
[69] Messner Individuals' Mot. to Dismiss, ECF No. 170.
[70] C.R.S. § 7-64-306(3) ("[A] person is not, solely by reason of being a partner, liable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for partnership obligations which are incurred, created, or assumed by the partnership while the partnership is a limited liability partnership."); *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1023 (Colo. 1998) (A limited liability partner's "liability is limited by operation of law with respect to creditors of the partnership.") (citing C.R.S. § 7-62-303(1) ("A limited partner of a limited liability limited partnership is not liable for the obligations of the partnership incurred while it is a limited liability limited partnership.")).

activity.[71] Plaintiffs name the "Messner General Partnership" as the RICO enterprise.[72] Because this enterprise does not exist, Plaintiffs fail to state a claim under RICO and conspiracy to violate RICO.[73] Therefore, Counts One and Two are dismissed.[74]

## III. REMAINING CLAIMS

The court has dismissed the only federal claims in this lawsuit (Counts I and II), as well as all claims against the Messner Individuals, the Messner Partners, Mr. Brigham, and the "Messner General Partnership." The only remaining claims are: (i) Count Three against Messner Reeves for conversion; (ii) Count Four against Messner Reeves and Mr. Welch for conversion; (iii) Count Five against Messner Reeves for negligence; (iv) Count Six against Messner Reeves and Mr. Welch for negligence; (v) Count Seven against Messner Reeves for breach of fiduciary duty; and (vi) Count Eight against Messner Reeves and Mr. Welch for breach of fiduciary duty. The Tenth Circuit has expressed a preference that district courts, when they dismiss all federal claims, typically should decline to exercise supplemental jurisdiction over state law claims.[75] Therefore, the court declines to exercise its jurisdiction over these remaining state law claims.

## IV. RULE 11 SANCTIONS

All Defendants other than Mr. Welch and Messner Reeves (the "Dismissed Defendants") seek Rule 11 sanctions based on their inclusion in this lawsuit.[76]

---

[71] *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).
[72] Compl. ¶¶ 101, 106.
[73] *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d).").
[74] Because the foregoing makes it plain that Plaintiffs' RICO claims fail, the court does not address the additional grounds for dismissal urged by Defendants.
[75] *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").
[76] Defendants' Mot. for Rule 11 Sanctions, ECF No. 179, filed October 15, 2024.

### A. Background

On July 25, 2024, Plaintiffs filed their initial Complaint.[77] On August 29, 2024, the Dismissed Defendants served on Plaintiffs' counsel a motion for sanctions in accordance with Federal Rule of Civil Procedure 11(c)(2).[78] The motion discussed Colorado law as well as attached and quoted from Messner Reeves' limited liability partnership agreement ("Limited Partnership Agreement"):

> Each Partner's liability shall be limited as set forth in the Act and other applicable law. Without limiting the generality of the foregoing, the Partners agree that if a professional act, error, or omission is committed by any of the Partners, managers, officers, directors, or employees of the Partnership, and if at the time of the commission of such professional act, error, or omission, the Partnership has professional liability insurance which meets the minimum standards required by the states that the Partnership is registered to do business in, *any Partner that has not directly and actively participated in such professional act, error, or omission shall not be liable for any damages caused thereby*.[79]

The Limited Partnership Agreement also listed the eleven equity partners in Messner Reeves who contributed capital and owned shares in the limited liability partnership.[80]

Plaintiffs' counsel responded that they would amend their Complaint.[81] The First Amended Complaint was largely identical to the original Complaint, with the notable exceptions of identifying the existence of the "Messner General Partnership," along with added allegations that the Messner Individuals "falsely proclaimed to be partners in Messner Reeves" and "are instead partners in a separate unregistered general partnership" with Mr. Welch.[82] On September 23, 2024, the Dismissed Defendants served a second motion for sanctions on Plaintiffs'

---

[77] Compl., ECF No. 1.
[78] Defendants' Mot. for Rule 11 Sanctions 2 n.2.
[79] Limited Partnership Agreement 18, § 6.11, ECF No. 180-1-B, filed October 15, 2024 (emphasis added).
[80] *Id.* at 2, 28–38.
[81] Defendants' Mot. for Rule 11 Sanctions 2 n.2.
[82] *See, e.g.*, FAC ¶¶ 2, 13, 16, 83–98, 101, 106–07; *see also* Messner Individuals' Mot. for Rule 11 Sanctions 4–6 (detailing similar allegations in original Complaint).

counsel.[83] Plaintiffs did not withdraw or alter their First Amended Complaint in accordance with the Dismissed Defendants' motion within the 21 day-period set forth in Rule 11.[84] Therefore, on October 15, 2024, the Dismissed Defendants filed the instant motion for sanctions.

**B.     Analysis**

Federal Rule of Civil Procedure 11(b) provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, . . . streamline the administration and procedure of the federal courts."[85] In analyzing whether sanctions are appropriate, the court first must determine whether a pleading violates Rule 11.[86] If it does, then the court imposes an appropriate sanction.[87]

### 1.     Whether Plaintiffs Violated Rule 11

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'"[88] The court "evaluate[s] [an

---

[83] Defendants' Mot. for Rule 11 Sanctions 3. The motion provided to Plaintiffs' counsel contained very minor, non-substantive changes compared to the instant motion.
[84] *Id.*
[85] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).
[86] *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019) (quoting *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988)).
[87] *Id.*
[88] *Id.* (quoting Advisory Committee Note on Rule 11).

attorney's] conduct under a standard of 'objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.'"[89] "When, as here, a pleading contains allegations that are not warranted by existing law, we examine whether they are warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[90] In this analysis, "it is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim."[91]

In this case, Plaintiffs did not allege that any Dismissed Defendant had any involvement in the substantive facts alleged, except for Mr. Brigham (an associate) and the non-existent "Messner General Partnership" through Mr. Welch's conduct. Plaintiffs' inclusion of these uninvolved individuals by creating the so-called "Messner General Partnership" with essentially no factual support amounted to an attempt to circumvent the clear limitations of liability enjoyed by members of Messner Reeves, a limited liability partnership,[92] and join more than 70 wholly uninvolved individuals in this lawsuit.

In so attempting, Plaintiffs relied almost entirely on the fact that certain individuals of the firm had the title of "partner" at Messner Reeves[93] and engaged in actions that are common to attorneys at any law firm, such as sharing office space, dividing responsibilities, and utilizing revenue from the individuals' work to cover shared expenses of the law firm. These uninvolved individuals, through allegations regarding the non-existent Messner General Partnership, were

---

[89] *Id.* at 1320.
[90] *Id.* (citations omitted).
[91] *Id.* (quoting *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990)).
[92] Limited Partnership Agreement 18, § 6.11; C.R.S. § 7-62-303(1) ("A limited partner of a limited liability limited partnership is not liable for the obligations of the partnership incurred while it is a limited liability limited partnership.").
[93] The Limited Partnership Agreement also demonstrated that these individuals were not equity partners at Messner Reeves. *Id.* at 2, 28–38.

"unreasonably named in the complaint by Plaintiffs' attorneys," and became, in substantial part, "the main focus of the litigation" in violation of Rule 11.[94] For example, Plaintiffs' RICO claims (Counts One and Two) relied on the existence of the "Messner General Partnership" as the RICO enterprise. And Counts One, Four, Six, and Eight were asserted against individuals who were not involved in any of the substantive allegations. This conduct is harassing and needlessly increased the cost of litigation for Defendants. Such allegations, if allowed to stand, would apply to innocent individuals at hundreds of limited liability law firms or other limited liability partnerships who would normally be shielded from suit. For the foregoing reasons, the allegations do not withstand the scrutiny of objective reasonableness.

What's more, Plaintiffs' attorneys had two opportunities to review draft motions for sanctions and several weeks to reconsider their course of action but chose to persist instead. Plaintiffs' entanglement of 70 uninvolved individuals in their case was factually unsupported and legally untenable. Therefore, sanctions are warranted.

> 2. *Appropriate Sanctions*

Having determined that Plaintiffs violated Rule 11 and that sanctions are warranted, the court next determines the appropriate sanction. Under Rule 11(c)(4), a sanction:

> must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

The court will award the Dismissed Defendants attorney's fees for the reasonable hours expended in drafting and otherwise briefing their motions for sanctions (whether or not filed with

---

[94] *Collins*, 916 F.3d at 1323.

15

the court)—including emails to opposing counsel regarding the same—and motions to dismiss.[95] The court also awards fees for time spent on behalf of the Dismissed Defendants responding to Plaintiffs' motion for preliminary injunction.[96] The applicable fees should be paid by Plaintiffs' counsel. Lastly, given this resolution, the court denies Plaintiffs' meritless cross-request for sanctions included in Plaintiffs' Opposition brief.[97]

## ORDER

Accordingly, the court GRANTS the Messner Individuals' motion to dismiss,[98] GRANTS the Messner General Partnership's motion to dismiss,[99] GRANTS IN PART Messner Reeves, LLP's, the Messner Partners', and Mr. Brigham's motion to dismiss,[100] GRANTS IN PART Mr. Welch's motion to dismiss,[101] and GRANTS the motion for Rule 11 sanctions.[102] Counts One and Two are DISMISSED with prejudice. The remaining counts are DISMISSED with prejudice as to all Defendants other than Messner Reeves, LLP, Mr. Welch, and Mr. Brigham, given that they were wholly uninvolved in the FAC's allegations and cannot be found liable solely based on Mr. Welch's conduct.

The court retains jurisdiction only over the amount of sanctions. The court declines to exercise jurisdiction over the remaining state law claims and therefore dismisses them without prejudice as to Messner Reeves, LLP, Mr. Welch, and Mr. Brigham.[103] The Clerk of Court is DIRECTED to close the case.

---

[95] The fees from the Messner Partners' Motion to Dismiss, ECF No. 171, that were devoted to the representation of Messner Reeves, LLP—which has not been dismissed—should be subtracted from the total fee award.
[96] ECF No. 203.
[97] ECF No. 195.
[98] ECF No. 170.
[99] ECF No. 177.
[100] ECF No. 171.
[101] ECF No. 182.
[102] ECF No. 179.
[103] The court recognizes that there are currently no state law claims alleged against Mr. Brigham. Notwithstanding, because Mr. Brigham has at least some involvement in the underlying facts, the court does not decide whether amending the FAC to allege a state law violation against Mr. Brigham would be futile.

Signed May 6, 2025.

BY THE COURT

_____
David Barlow
United States District Judge